[Civ. No. 6148. First Appellate District, Division Two.—March 21, 1928.]

HENRY R. HILL, Respondent, v. ASSOCIATED ALMOND GROWERS OF PASO ROBLES (a Corporation), Appellant.

Griffith & Thornburgh and Wm. G. Griffith for Appellant.

R. T. Quinn for Respondent.

KOFORD, P. J.—Plaintiff recovered a judgment for the purchase money which he had paid upon a contract for the purchase of a ten-acre almond orchard. The contract was rescinded for fraudulent concealment inducing plaintiff to consent to a substitution in his contract of a prune orchard for the almond orchard. Defendant appeals, claiming chiefly that the evidence is insufficient to prove fraud and that it shows such laches upon the part of plaintiff in discovering the fraud as to bar his action.

The facts disclosed by the evidence and findings are as follows: In September, 1919, plaintiff, who then resided in Chicago, entered into a written contract with defendant to purchase the north ten acres of lot 38, Associated Almond Orchards, Independence No. 1, near Paso Robles, California. The contract called for monthly installments of purchase price which were paid as they fell due. It required the corporation to plant the land to almond trees, to cultivate and care for the same and pay all taxes for four years. It contained covenants for the protection of the buyer in case of illness or death. It provided also for a development fund to be held by a trustee who would also hold the title to the land. At the time this contract was executed plaintiff had never seen the property, but in December, 1920, he visited California and inspected the property. He found it satisfactory. It was planted to almond trees about one year old. He returned to his residence in Chicago and continued in his occupation in Detroit, Michigan. He there received a letter January 15, 1921, from the defendant corporation written from Chicago by its assistant vice-president who resided there. This letter alone induced the plaintiff to consent to a substitution of a different ten-acre orchard than that which he had first purchased. The ten-acre orchard, thus substituted, plaintiff subsequently discovered was inferior in quality and was planted to prunes and not almonds. The failure to disclose these facts to plaintiff constitute the fraudulent concealment. This letter to plaintiff read as follows:

"In making a switch of lots for a Mr. Clark who wanted to get two lots adjoining (one planted last year and one to be planted this year), we have released lot 82 of Indepen-

dence Tract No. 6, which, as you know, is our only tract that is near the main east and west state highway, which is now being constructed. This lot which is No. 82 of Independence Tract No. 6 is located on the main county road, is a well shaped lot and we feel sure that you will like it better than the north 10 acres of Lot 38, Independence Tract No. 1, which you now have. Would like to have you take advantage of this opportunity and feeling sure that you will want to do so, we are enclosing herewith, letter in duplicate, changing the assignment and if you are agreeable, will you place one copy of the enclosed letter with your contract and sign and return the other copy for our files.

* * * * * * *

Yours very truly,
Associated Almond Growers of Paso Robles.
By T. B. Willard,
Ass't to Vice President.''

Plaintiff believed from this letter that ''it was an even trade'' and everything would be the same except the location and so without further question he gave his consent and the substitution was indorsed on his contract by attaching a letter to it.

In January, 1922, plaintiff moved to California and worked as a hardwood floor subcontractor in Los Angeles and Alhambra. His work kept him occupied daily except Sundays. He never visited his new orchard until October, 1923, when he went there with the vice-president and general manager of the defendant corporation. He discovered to his surprise it was prunes and not almonds. He testified: ''It is a place laid right down in a hole, in a regular wash, and he (the vice-president and general manager) explained to me why the almonds wouldn't grow there so they put prunes there. I told him I wasn't buying prunes, I was buying almonds, and he says 'Well somebody had made a bull.' ''

Upon plaintiff's return to Alhambra he wrote a letter of protest to the defendant and later consulted an attorney with the result that on November 14, 1923, he served a notice of rescission of the contract upon the grounds of the fraudulent concealment of the different character of the substituted land and orchard and upon other grounds as

well. The written notice demanded back the purchase money paid and tendered a deed from plaintiff and wife conveying the property back to the Bank of Italy, trustee. The written notice further stated that defendant might, if he found it more convenient, place the demanded purchase money in escrow with a bank with instructions ''to receive from me the said deed or any other necessary instruments that you may wish or think necessary.''

The demand was not complied with and this action followed. After the notice of rescission was served plaintiff received by mail a deed conveying to him the substituted land. The Bank of Italy, trustee, was grantor. The deed had been recorded August 20, 1923. At the trial plaintiff offered in evidence and left with the clerk of the court a deed from plaintiff and wife to said Bank of Italy for the purpose of keeping good his tender to reconvey.

We see no merit in the appellant's contention that the tender was not good because a new trustee had been in the meantime substituted for the Bank of Italy. The notice of rescission contained a written offer to reconvey and that was sufficient tender under the circumstances, the defendant rejecting entirely the notice of rescission. (Code Civ. Proc., secs. 2074, 2076.)

The letter of January 15, 1921, in connection with the circumstances attending it was a suppression or concealment of facts in the knowledge of the defendant which amounted to actual fraud. (Civ. Code, sec. 1572.) Mr. Willard, the assistant vice-president, who wrote the letter over the corporation defendant's signature, testified that at the time he wrote the letter he knew nothing about the orchards, but still he believed that the substituted land contained an almond orchard. Whatever may have been the individual state of mind or ignorance of Mr. Willard there is no doubt whatever that the corporation well knew the character of its own land. It planted the prune trees there and was under contract to cultivate and otherwise care for them. The corporation is the defendant, not Mr. Willard. The corporation wrote the letter, not Mr. Willard. Plaintiff in proving knowledge on the part of the corporation was not confined to proving it by the knowledge of the very officer who wrote the letter.

The defendant might have remained entirely silent about the character of the substituted land and allowed plaintiff to decide the question entirely by himself. In that case plaintiff, if he had an equal opportunity for observation, might be expected to investigate for himself or to accept the substitute at his own risk under the rule of *caveat emptor*. But plaintiff had never seen the substituted land and was at a disadvantage. Defendant's letter undertook to make statements of fact and opinion about the land and was not entitled to state half truths. The following statements of law are quoted with approval in *Sullivan* v. *Helbing,* 66 Cal. App. 478 [226 Pac. 803] :

"Though one may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure. (12 R. C. L., 'Fraud and Deceit,' section 71.)

"Fraudulent representations may consist of half-truths calculated to deceive. Thus a representation literally true is actionable if used to create an impression substantially false (26 C. J., p. 1100)."

Under the circumstances disclosed by the record the letter justified plaintiff in believing at least that the substituted land was in almonds, as that was his previous purchase, and we think it also justified him in believing that the land was equal in quality to his first selection.

Plaintiff rescinded promptly upon discovering the fraud, but it is claimed that he was not diligent in discovering the fraud; that after moving to California he should not have waited one year and ten months before visiting the orchard. The orchard was a day's journey by automobile from plaintiff's residence. Plaintiff's occupation consumed all his time except Sundays. The contract put upon the defendant the entire burden of caring for the development and growth of the orchard for four years. The court found against the defense of laches and the finding is sufficiently supported by the evidence as against an attack upon appeal, even though plaintiff's delay was one year and ten months after coming to California in January, 1922. Length

of time by itself does not ordinarily establish laches. (10 Cal. Jur. 526, sec. 64.) No facts are brought home to plaintiff from which the law would infer that he had knowledge putting him upon inquiry and no prejudice to defendant is shown by the delay. The defendant resold the first ten acres immediately after plaintiff consented to the substitution.

It is contended that if fraud vitiated the agreement to substitute, the judgment of the court should have decreed a restoration of the original contract and not a rescission in total. The objection is technical only. Defendant at the time of the trial had long since put it out of its power to perform the contract in respect to the first ten-acre orchard by selling it to other purchasers. Conceding that plaintiff could, if he chose to do so under conditions making it equitable, insist upon a restoration of the original contract, the fact is that he did not do so. Defendant cannot insist upon it because it is unable to perform that contract.

Before plaintiff visited the substituted orchard and rescinded, he had accepted a deed and given back to defendant a mortgage for the unpaid balance of purchase price. This was done through a supplemental agreement not involved in this appeal, made January 1, 1923. This mortgage was, by defendant, pledged for a loan at the County National Bank and Trust Company of Santa Barbara. Appellant claims that the bank was an essential party to the action for rescission. The judgment gives plaintiff no relief against the bank. It is only a money judgment against the defendant. The bank's rights in the mortgage are the same now as before the judgment. The value of the mortgage in its hands now depends upon its validity and enforceability between the parties to it, just as it did before the judgment. The mortgage was not negotiable and the bank took it subject to the equities between the parties and this is no more true after the judgment than before.

This disposes of all the points on appeal.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.