COMMERCIAL CREDIT CORPORATION, Respondent, *v.* J. EUGENE WELLS, Appellant.

Fourth Department, March 5, 1930.

*Ward, Flynn, Spring & Tillou* [*Julius A. Schreiber* of counsel], for the appellant.

*Buecking & Sengbusch* [*Martin H. Buecking* of counsel], for the respondent.

EDGCOMB, J. On October 9, 1926, the J. E. Wells Co., Inc., a corporation engaged in the sale of motor vehicles in the city of Salamanca, N. Y., sold a Pontiac sedan to W. C. and S. C. Wilder, on a conditional sales contract, by the terms of which the title to the car remained in the seller until the purchase price was fully paid.

Five days later, the J. E. Wells Co., through the defendant, its president, sold and assigned this contract to the plaintiff. In the assignment it was represented that the assignor had title to the car, free and clear of all incumbrances, at the time of its sale to the Wilders.

The sedan in question was shipped to the Wells Co. along with two others of a similar make, and a draft for the purchase price of all three cars was attached to the bill of lading. The company borrowed of the Salamanca Trust Company $1,744, with which to pay the draft, and gave to the bank a note for that amount,

dated September 13, 1926, payable on or before thirty days after date, and secured by a chattel mortgage on the three automobiles. A renewal note for a like amount, and with the same collateral, was given to the trust company under date of November 13, 1926.

The Wilders defaulted on their contract, with the exception of the initial installment. The plaintiff attempted to repossess the car, as it had a right to do under the contract of sale, but found that it had already been taken by the bank under its chattel mortgage.

Plaintiff then brought this action, not against the J. E. Wells Co., Inc., but against J. Eugene Wells, its president and manager, alleging that he had fraudulently and falsely represented to the plaintiff that the Wells Co. was the true and lawful owner of the car sold to the Wilders, and that the same was free and clear of all claims, liens and incumbrances whatsoever, and that he made said representations, knowing full well that they were untrue, with the intent of influencing the plaintiff to buy the contract.

One who has been induced to purchase property by means of fraudulent representations has, upon discovery of the fraud, one of three remedies, any one of which he may elect to pursue: (1) He may rescind the contract, and sue in an action at law to recover the consideration paid; (2) he may bring an action in equity to revoke the agreement, in which action he will be accorded full relief; (3) he may retain that which he has received, and bring an action at law to recover the loss which he has sustained. (*Vail* v. *Reynolds*, 118 N. Y. 297; *Weigel* v. *Cook*, 237 id. 136.)

A plaintiff is confined to the damages appropriate to the remedy which he selects. (*Weigel* v. *Cook, supra.*)

If the statement regarding the title to the Wilder car was untrue, and if it was made with full knowledge of its falsity, and with the intention of inducing the plaintiff to purchase the contract, and if the respondent actually relied thereon, then there can be no doubt that the plaintiff would have a cause of action against the corporation, and could proceed against it upon any one of the three theories above outlined. The same, however, is not true so far as this defendant is concerned; as against him, the plaintiff has not the choice of these three remedies.

An action brought upon the theory of a rescission of the agreement between plaintiff and the Wells Co., where it was sought to recover the amount which the plaintiff paid for the Wilder contract, would be one in assumpsit for money had and received, and would not lie against this defendant, because he was not one of the contracting parties, and never had or received the consideration paid. That kind of an action would lie only against the J. E. Wells Co., Inc. (*American Nat. Bank of N. Y.* v. *Wheelock*, 82 N. Y. 118.)

Of necessity, a corporation can only act through its officers and agents. In executing this assignment in the name of the corporation, the defendant was avowedly acting for and on its behalf. In so doing he was well within the scope of his authority. We are not dealing with the case of an undisclosed principal. Defendant's agency was fully revealed. There is nothing here to show that appellant intended to bind himself personally. Under these circumstances, the contract is that of the principal and not of the agent personally, and involves no personal liability on the part of the latter, so far as the contract itself is concerned. (*Hall* v. *Lauderdale*, 46 N. Y. 70; *Colvin* v. *Holbrook*, 2 id. 126; *Commercial Bank* v. *Waters*, 45 App. Div. 441, 444; affd., 167 N. Y. 583; *Title Guarantee & Trust Co.* v. *Sage*, 146 App. Div. 578, 581; *Anderson* v. *English*, 105 id. 400, 404; *Jones* v. *Gould, No. 2*, 123 id. 236, 239.)

The presumption is that an agent intends to bind his principal, and not himself. (*Commercial Bank* v. *Waters, supra; Hernandez* v. *Brookdale Mills, Inc.*, 194 App. Div. 369, 380.)

On the other hand, if the plaintiff chose to bring a common-law action of fraud and deceit against this defendant, he could not hope to escape liability for his tort simply by showing that he was acting as agent for the corporation, of which he was the president. There is no such relation as principal and agent in a tort. One cannot escape responsibility for his wrongful act simply because another is also liable for the same injury. (*Hubbell* v. *Meigs*, 50 N. Y. 480, 491; *Gutchess* v. *Whiting*, 46 Barb. 139; *Hecker* v. *DeGroot*, 15 How. Pr. 314; *Upton* v. *Vail*, 6 Johns. 181.)

This brings us to a discussion of the nature of this action. There can be no doubt as to the theory upon which the plaintiff elected to proceed. The action was brought and tried upon the assumption that the plaintiff had rescinded its contract with the Wells Co., because of certain misrepresentations of the defendant, and was entitled to a return of the purchase price, less the installment paid by the Wilders. Plaintiff has never made any other claim, and does not seek to shift its position at this time.

The complaint alleges that the plaintiff has " duly rescinded and disaffirmed its contract and demanded payment of said J. E. Wells Co., Inc., and this defendant of the sum of $685.88." This is a prerequisite to an action brought on the theory of a rescission, and not to one for fraud and deceit.

When it came down to the trial, respondent adhered to the theory which it had adopted, and proved a tender to the defendant of the Wilder contract, a proceeding which would be applicable only to an action for rescission. If the plaintiff had attempted to recover upon the theory of fraud and deceit, it would have kept

this contract, and sued to recover the damages which it had sustained by reason of defendant's fraud. No evidence whatever was given upon which such damages could be determined. The trial court directed the jury to return a verdict for the unpaid balance of the Wilder contract, showing conclusively that the case was disposed of upon the theory that the action was one in assumpsit for money had and received.

Respondent, in its brief, makes the following statement: " This is an action based on the rescission of a conditional sales contract on the ground of fraud, and is brought to recover back the consideration parted with;" and again, " It must be remembered that this is an action based upon a rescission." Plaintiff's brief is largely confined to a discussion of the proposition that it is not essential to prove defendant's intent to defraud in an action based upon a rescission of a contract.

The plaintiff having definitely elected to bring this action on the theory that it had revoked its agreement with the Wells Co., and was entitled to a return of the money it had paid for the purchase of the Wilder contract, and having tried the case upon that hypothesis, and having insisted throughout the entire history of this litigation that such was the nature of the action, and never having asked or intimated that it should otherwise be considered, the judgment cannot now be upheld upon some other theory which has never been urged, or even suggested. Defendant, as above indicated, cannot be held personally liable in this action, and the judgment should, therefore, not only be reversed, but the complaint should be dismissed.

We might add that, if this could be construed as a common-law action for fraud and deceit, still the judgment appealed from could not stand. In such case the rule of damages to be applied would be the difference between the amount paid for the article purchased and its actual value, together with interest from the date of purchase. (*Reno* v. *Bull*, 226 N. Y. 546; *Hotaling* v. *Leach & Co.*, 247 id. 84, 87.)

The record is barren of any evidence whatsoever as to the value of the Wilder contract. The court had no right to say that it was worthless, and to direct the jury to find a verdict for the entire purchase price paid by plaintiff, less the one payment made by the purchasers of the car, with no deduction whatever. The Wilders were personally liable for the purchase price of the car in question. The automobile was put up as collateral security to that indebtedness. In the contract which plaintiff purchased, the Wilders not only obligated themselves to pay any deficiency which existed after the collateral had been sold and the proceeds applied on the sum

owed, but actually confessed judgment for that amount. If they were financially responsible, the loss of the security would not greatly affect the value of their contract. If, however, its worth was to be determined more by the collateral than by the responsibility of the obligors, then, of course, the agreement would be worth but little, if the security had disappeared. There is no evidence from which the jury, in an action for fraud and deceit, could determine the actual pecuniary loss which the plaintiff sustained by reason of any misrepresentation of the defendant, much less any which would warrant the court in determining that question as one of law.

Furthermore, the court refused to admit in evidence a certain check for $654.85, dated October 15, 1926, the day after plaintiff purchased the contract in question, given by the J. E. Wells Co., Inc., to the order of the Salamanca Trust Company, and upon which was indorsed the statement that it was in payment of the Wilder car, and which bore a stamp indicating that it was paid on October sixteenth. We think that this check was competent evidence upon the question of damages, even if it be held that it did not bear on the question of defendant's intent to deceive. If the bank had actually been paid the amount which it advanced on the car in question, the automobile was available as security to the Wilder contract. Such a situation could not help but affect the value of such agreement.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment reversed on the law, with costs, and complaint dismissed, with costs.