## THE SAVEN CORPORATION, A DELAWARE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97649. Promulgated October 14, 1941.

*A. L. Evely, Esq., Raymond H. Berry, Esq.,* and *Prewitt Semmes, Esq.,* for the petitioner.

*Thomas F. Callahan, Esq.,* for the respondent.

346

OPINION.

OPPER: In general terms the question is petitioner's liability to surtax under section 104 of the Revenue Act of 1928.[1] Respondent charges that petitioner's returns were fraudulent and unless he is

[1] SEC. 104. ACCUMULATION OF SURPLUS TO EVADE SURTAXES.

(a) If any corporation, however, created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 13 and shall be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.

(b) The fact that any corporation is a mere holding or investment company or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.

(c) As used in this section the term "net income" means the net income as defined in section 21, increased by the sum of the amount of the dividend deduction allowed under section 23 (p) and the amount of the interest on obligations of the United States issued after September 1, 1917, which would be subject to tax in whole or in part in the hands of an individual owner.

* * * * * * *

sustained in this contention we shall not be required to decide the substantive question, for the deficiencies would be barred by the statute of limitations.

Although the years involved are 1928 and 1929, the case must be considered against a historical background dating from 1923. In that year Edward S. Evans, the sole stockholder of petitioner, brought about the typical series of complicated corporate transactions to the end of effecting a sale of a part of his stock interest in E. S. Evans & Co. without the payment of any tax on the gain resulting.

Avoiding unnecessary detail, the operation consisted of the organization of two new corporations, one of which, the Evans Corporation—which, for convenience, we shall hereinafter call the Corporation—became the owner of the stock of the second new corporation which, in turn, through intermediate ownership of Evans' stock in E. S. Evans & Co., acquired the latter's assets. A part of the second corporation's stock was then sold by the Corporation for cash, which it retained.

In four years the Corporation's earned surplus grew to over $600,000 and by the end of 1928 it had reached nearly $1,400,000. During all this period no dividends had been declared. At about that time respondent notified the Corporation of his intention to proceed against it, under Revenue Acts of 1924 and 1926, for the undue accumulation of surplus in 1924, 1925, and 1926.

Thereupon petitioner was organized and Evans transferred to it all of his stock in the Corporation, taking in exchange the stock of petitioner. Within a few months, during the latter part of 1928 and the early part of 1929, the Corporation declared in dividends which were received by petitioner a total of over a million and a half dollars. Petitioner's returns for those two years contain no reference to these payments. It is this omission to which respondent refers in the charge of fraud.

Petitioner does not deny its failure to disclose the receipt of the dividends, but seeks to excuse its action in substance upon the dual ground that the omission was immaterial since the dividends were not taxable, and that it was proper because their payment out of the Corporation's surplus correspondingly reduced the value of the Corporation's stock and left petitioner's total assets and liabilities in the same balance as they were when it was organized.

A survey and consideration of the entire record makes it impossible to escape the conclusion that the charge of fraud has been sustained. Giving the greatest possible weight to all inferences in petitioner's favor and the most sympathetic consideration to its explanations, there yet emerges the inescapable concealment of the receipt of

enormous items of income. Petitioner's attempted justification, even were it more persuasive, could scarcely support so flagrant an omission to report the facts. *Louis Ginsburg*, 13 B. T. A. 417. We have accordingly found as a fact that petitioner filed false and fraudulent returns for both years with intent to evade tax.

We think this conclusion may be demonstrated to a mathematical certainty as follows: If the 1928 return had been prepared and filed with as much information as was called for there would have been shown on the first page under the heading "gross income":

1. Gross sales from trading or manufacturing _____ $12,571.00
2. Less cost of goods sold:
    (a) Inventory at close of preceding year (opening inventory) _____ $2,500,000.00
    (b) Merchandise bought for sale _____ 12,112.50
    (c) Cost of manufacturing or otherwise producing goods _____ 0.00

    (d) Total of lines a, b and c _____ $2,512,112.50
    (e) Less inventory at end of year _____ 2,222,819.47

3. Gross profit from trading or manufacturing (loss) _____ 289,293.03
4. Interest _____ 578.96
9. Dividends on stock of domestic corporations _____ 575,000.00

11. Total income _____ $298,856.93
    DEDUCTIONS:
15. Interest _____ $677.81
19. Dividends (From Schedule H) _____ 575,000.00

23. Total deductions _____ $575,677.81

24. Net income (loss) _____ $276,820.88

These are all the transactions which the proof shows were effected in 1928. The comparatively small items of interest and of goods bought and sold did not appear upon the 1928 return. For its omission petitioner offers the explanation that so little was done in 1928 as to make it virtually true that no business was transacted in that year. "Petitioner corporation, although organized in 1928, was substantially not in business until 1929." We feel justified in assuming, therefore, and it would be contrary to petitioner's assertions if we did not, that nothing more need be inserted opposite the entry "merchandise bought for sale" or costs or other expenses of purchases, sales or operations. On petitioner's theory, therefore, the foregoing would have been the correct entries on the 1928 return. They did not appear on that return. And although some of the items could be deducted from a careful examination of the return, that does not apply to the $575,000 received by petitioner in cash as dividends from the Corporation which, of course, is the crux of the present proceeding.

As far as normal tax is concerned that item might make no difference; for ordinary dividends were not subject to normal tax in the hands of corporate recipients. But under section 104 they must be included in corporate income. And without some indication on the return there was no manner in which respondent could gather that this large sum had been received or could determine for himself whether section 104 was applicable and, if so, the amount of the income chargeable thereunder.

It might be possible for a taxpayer to be innocently unconscious of this possibility and, without knowledge of the significance of section 104 and of the receipt of dividends in connection therewith, to omit a dividend item without fraudulent intent, even one so large as that presently involved. It would, it seems to us, even then be negligent and dangerous, but perhaps a case could be made under such circumstances for the good faith of the action. Here, however, the organization of petitioner took place within a few weeks after the time that its predecessor and subsidiary had been charged by respondent under the old section 220, the forerunner of section 104. The year ended soon thereafter and the return was due in the following March. Petitioner was evidently organized to receive the dividends which its predecessor corporation was about to pay,[2] with the result, if not for the purpose, of precluding the application to the latter of that section.

This history seems to us to give the concealment of the dividend a more sinister aspect. Not only does it remove any possible contention by petitioner that its officers and agents were unaware of the significance of the receipt and payment of dividends for purposes of section 104, it also establishes a motive for the concealment which is not reconcilable with innocent mistake. For by declaring a dividend the Corporation was enabled to frustrate, at least for 1928 and 1929, respondent's attempt to apply to it the penalty provisions of section 104. By concealing the fact that petitioner was the recipient of that dividend, it was made equally impossible for him to follow the process through and to enforce against this petitioner the penalty which its affiliate had avoided. The ultimate result was that the earnings of the Corporation no more found their way into the personal income of its erstwhile individual stockholder than they would have if the dividends had not been declared; while at the same time the penalty devised for this result was successfully avoided.

The record thus demonstrates conclusively that there was a concealment of an item of income of such proportions that the authors

---

[2] "* * * Petitioner corporation, on the contrary, was formed for the purpose of taking over the going business of a predecessor corporation, which was accomplished not through a tax free reorganization, but through what amounted to a transfer of the earned surplus, in property, of the Evans Corporation to petitioner as a dividend * * *." (Petitioner's brief.)

of the return could not have overlooked it, *M. Rea Gano*, 19 B. T. A. 518; that it must therefore have been intentional; that it was material; that its materiality was known; and that its omission prevented the computation, assertion, and exaction of the tax for which the facts actually called.

There are other respects in which concealments in the 1928 return would tend to mislead the respondent. The balance sheet attached to the return shows a comparatively insignificant item of cash in the amount of about $34,000. The Evans' dividends were paid in cash during the latter part of the year, $250,000 having been disbursed on December 20. As we have noted, petitioner, an investment company, emphatically denies that it transacted any business of consequence during the year 1928—"petitioner had, substantially speaking, no transactions during the balance of the year 1928." It is therefore impossible for it to contend that it invested a sum as large as $575,000 within that brief period. The conclusion is inescapable that the great preponderance of the dividend receipts remained on hand in cash at the end of the year. A reference to so large a sum on the balance sheet with no indication of the transaction of any business could reasonably lead to inquiry on the respondent's part, but this fact does not appear on the return.

Again, the question is asked on the return: "Was the corporation in any way an outgrowth, result, continuation, or reorganization of a business or businesses in existence during this or any prior year since December 31, 1917?" This question is unanswered. It is followed by the requirement: "If answer is 'yes' give name and address of each predecessor business, and date of change in entity." No such name is given. Petitioner's brief states: "Evans Corporation had been in business for some years as a dealer in securities and it is apparent that Saven Corporation was formed for the purpose of taking over the business of the Evans Corporation." A reference to the relationship of the Evans Corporation at this point could well have called to respondent's attention the connection between the two corporations. While, taken by itself, the failure to answer can perhaps not justifiably be treated as a misrepresentation, there is no explanation for it, and it seems to us, in connection with the other circumstances, an added indication of petitioner's concern that no telltale clue appear which would disclose the true significance of the dividends declared by the Evans Corporation and their receipt by petitioner.

We are satisfied that petitioner's 1928 return was deliberately conceived to mislead the respondent; that it was false in material and in carefully and consciously calculated respects; that it was purposely and intentionally executed and filed with intent thereby that

petitioner should be enabled to escape Federal taxes; and that the deficiency here determined was due to that fraudulent design.

Similar conclusions follow with respect to the 1929 return. It also failed to disclose a dividend, in that case of over a million dollars. Its balance sheet carried forward the closing balance sheet of the previous year and failed to indicate the possession of a large amount of cash. Perhaps in one sense it was even more flagrant than the previous return, in that a line referring to dividends is not left blank, as was that for 1928, but contains a figure of insignificant proportions and affirmatively fails to disclose the truth as to the total dividends received. The same conclusion must follow on the fraud question with respect to the 1929 return.

Much is made of the fact that the returns were prepared by petitioner's accountant under the direction of its tax consultant, but were signed and sworn to by its president and treasurer, Evans; that the latter claims to have relied largely on the advice of the two former individuals in executing the returns; and that, since they are now dead and can not testify and, inferentially, since Evans had no personal knowledge of the falsity of the returns, the conclusion of fraud can not be supported. Evans is also shown to have been a man of many business interests and of some consequence in the community. We may say in passing that the testimony shows nevertheless that Evans "would read what had been written and discussed it [the tax return] at the time I [he] signed it" and that, as to the payment of the dividend "I probably knew it at the time, if it was done." But be that as it may, what we consider the short and final answer is that the charge of fraud is here leveled at the petitioner, which is a corporation. Like any other corporation, it could act only through its officers, employees, and agents. *Commercial Credit Corporation* v. *Wells*, 228 (N. Y.) App. Div. 402; 240 N.Y. S. 139, 142. Its action can be viewed only as the sum of the acts performed in its name by such of these individuals as were concerned. If petitioner had knowledge through the mind of one of its authorized agents of a fact, as we think it unquestionably did, and through the same or another agent deliberately and fraudulently made a contrary statement which was signed and sworn to by still another, all that knowledge and all those acts would nevertheless be attributable to petitioner. *New York Central & Hudson River Railroad* v. *United States*, 212 U. S. 481, 492–495; *Philadelphia, Wilmington & Baltimore Railroad Co.* v. *Quigley*, 62 U. S. 202, 211; *Hill* v. *Associated Almond Growers* (Cal.), 265 Pac. 873, 875; *Summerill Tubing Co.*, 36 B. T. A. 347. In no other manner, it seems to us, would it ever be possible to determine that fraud had been committed by a corporation, although it can not be doubted that a corporation is

capable of committing fraud. 10 Fletcher on Corporations, Perm. Ed., 384; *L. Schepp Co.*, 25 B. T. A. 419. It follows in our view that no exculpation of petitioner's purposely deceitful conduct can be drawn from this aspect of the transaction.

Petitioner offered no evidence against the application of section 104, independent of the issues it raises with respect to fraud. Since, however, two of its contentions under the latter question would also be material in a discussion of the application of section 104, they require disposition.

In the first place it is asserted that petitioner's stockholders avoided no tax because under *W. S. Farish & Co.*, 38 B. T. A. 150; affd. (C. C. A., 5th Cir.), 104 Fed. (2d) 833, petitioner's balance sheet was such that it had no accumulated earnings and profits and therefore section 104 is deprived of any force. This follows from petitioner's argument that, since the dividends were declared out of the surplus of its subsidiary corporation, there was an equivalent reduction in the value of its asset, consisting of the subsidiary's stock. The difficulty is that there is no evidence extrinsic of the books to indicate the value of the subsidiary's stock at the close of the year. The Corporation was an active functioning company and it seems apparent that for other reasons this stock could have increased in value due to earnings or appreciation in assets to an extent which might offset or at least diminish the reduction caused by payment of the dividend.[3] There is nothing anywhere in the record from which it may even be inferred that such was not the fact. We think that in this phase of the case petitioner had the burden of going forward and that evidence should have been produced if it was available that the market value of the stock had correspondingly declined.

But even if we are wrong in this, and if the burden upon the respondent goes so far as to require that the evidence on this point also appear affirmatively in denial of petitioner's assertions, it happens that petitioner's own statements supply that evidence. It is furnished by the balance sheet, presumably reflecting the condition of its books, which petitioner attached to its return for both years. *B. F. Edwards*, 39 B. T. A. 735. The balance sheet shows that the decrease in inventory was less by several hundred thousand dollars than the dividends received in 1928; and in 1929 the inventory increased rather than the reverse. If the $575,000 in cash which petitioner received in dividends, but did not show, be added to the assets, at least the difference would have been available for distribution in 1928; and, not having been distributed in 1928, it would have re-

---

[3] From the end of 1927 to the end of 1928 there was an apparent increase in earned surplus of almost $800,000 and the dividends declared in 1928 and 1929 totaled almost $200,000 more than the surplus shown in the latter part of 1928.

mained to increase petitioner's surplus and leave an equivalent amount subject to distribution in 1929. And see *R. L. Blaffer & Co.*, 37 B. T. A. 851; affd. (C. C. A., 5th Cir.), 103 Fed. (2d) 487. Nor are we impressed by petitioner's citation of *Corporate Investment Co.*, 40 B. T. A. 1156, 1171. To say, as the Board said there, that a surplus carried over from prior years does not constitute an accumulation of earnings and profits of the current year is fundamentally different from the conclusion we should have to reach here that dividends received in the current year are not earnings and profits of the recipient merely because they may represent a prior year's earnings of the declaring corporation.

Second, the argument is made that petitioner was a dealer in securities and as such, entitled to inventory its stock on hand; and that since it treated the dividends as received in liquidation any income was offset by the loss in the inventory account, with the result that the dividends did not increase its net worth. Without deciding whether petitioner can be considered a dealer—see *O. L. Burnett*, 40 B. T. A. 605; affirmed on this issue (C. C. A., 5th Cir.), 118 Fed. (2d) 659—or whether in principle or practice it actually operated on the inventory method, what we have said on the previous point will also dispose of this one. If the dividends received be added to the inventories which petitioner itself shows on the tax returns, the increase in net worth follows automatically. This argument of petitioner may have some weight in answer to respondent's assertion that if this was in fact a liquidating dividend, petitioner's basis was so small that a sizeable gain resulted which should have been reported for normal tax purposes in both years. On this question we express no opinion, for the case is not so presented as to raise any issue on petitioner's taxable income, except under section 104. We may mention in passing, however, that petitioner now concedes that the amounts it received were not liquidating dividends. If they were not and are not in consequence to be viewed as a payment in exchange for the stock, petitioner's treatment of them in that manner on its books was another instance of lack of due regard for accuracy in recording the transaction.

Since petitioner has offered no evidence to rebut the presumption of correctness attaching to the deficiency notice, it has not sustained its burden of showing that section 104 is inapplicable. We need not, however, rest our decision upon that point, for petitioner was characterized by its president at the hearing as a "holding company"; what evidence there is indicates its only business was investments;[4]

---

[4] Thus, as reiterated in petitioner's brief, it "was formed for the purpose of taking over the going business of a predecessor corporation" which, as its president testified, had in turn been "engaged in the investment banking business dealing in securities, particularly bonds."

so that it was clearly "a mere holding or investment company", and we have so found as a fact. There is no evidence to rebut the presumption which the statute creates when this appears. Similarly, petitioner concedes the applicability of the 25 percent penalty for delinquent filing of the 1928 return, if there should be any deficiency to which it could attach. Having found that respondent has sustained the burden of proving fraud, the remaining issues must accordingly likewise be decided in his favor.

Reviewed by the Board.

*Decision will be entered under Rule 50.*