The Crescent Manufacturing Company, Mary Nagel, T. J. Brown, Bertha Brown, Edith Pfefferle, Glenn B. Pfefferle, distributees of the assets of The Crescent Manufacturing Company, and T. J. Brown, formerly Executor of the Estate of R. H. Brown, deceased, and a distributee of the assets of The Crescent Manufacturing Company et al. [1] v. Commissioner. Crescent Mfg. Co. v. Commissioner
Docket Nos. 12200, 13653, 13654, 13655, 13656, 13657, 13658.
United States Tax Court
1948 Tax Ct. Memo LEXIS 97; 7 T.C.M. (CCH) 630; T.C.M. (RIA) 48171; August 31, 1948
*97 Harry S. Bugbee, Esq., 2001 Toledo Bldg., Toledo, Ohio, and Thomas J. Dolan, C.P.A., 1600 Toledo Bldg., Toledo, Ohio, for the petitioners. Clarence E. Price, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined declared value excess-profits and excess profits tax deficiencies against the corporate taxpayer. The Crescent Manufacturing Company, for the taxable year January 1, 1942, to November 30, 1942, in the respective amounts of $3,008.09 and $29,691.43, and penalties thereon of $1,504.05 and $14,845.72, respectively. The other petitioners are before us as transferees of The Crescent Manufacturing Company. The petitioners have conceded that The Crescent Manufacturing Company is liable for the deficiencies as determined and have already paid such deficiencies. The transferees also admit transferee liability for any penalties that may be found to be due from the company, but they deny any liability on the part of the company for the penalties. The parties have submitted a written stipulation of facts which we incorporate herein by reference and have adduced other oral and documentary evidence. For the purpose of *98 this opinion the facts may be briefly summarized as follows: Findings of Fact The petitioner, The Crescent Manufacturing Company, hereinafter referred to as the Company, was an Ohio corporation with its principal place of business at Fremont, Ohio. Its returns for the taxable year involved were filed with the collector of internal revenue for the 10th district of Ohio. The Company was dissolved on November 30, 1942, and the business has since been conducted as a partnership under the same name by the former stockholders. Upon the date of the Company's dissolution its capital stock was held as follows: Name
Stock
Mary Nagel
549 shares
R. H. Brown
360 shares
T. J. Brown
129 shares
G. P. Pfefferle
1.5 shares
Bertha Brown
261 shares
Edith Pfefferle
199.5 shares
R. H. Brown was president of the Company and the executive head of the business. Bertha Brown was his wife. Mary Nagel and Edith Pfefferle were his sisters, and G. P. Pfefferle a nephew, the son of Edith Pfefferle. Upon liquidation of the Company these stockholders received the following distributions of assets: Mary Nagel
$57,263.85
R. H. Brown
37,550.07
T. J. Brown
13,445.44
G. P. Pfefferle
156.46
Bertha Brown
27,223.79
Edith Pfefferle
20,809.00
*99 R. H. Brown served as president of the Company from 1931 until its dissolution. The other officers were Mary Nagel, secretary-treasurer, and B. J. Weiler, assistant treasurer. These officers and T. J. Brown were the directors in 1941 and 1942. There was an executive committee composed of R. H. Brown, Mary Nagel and B. J. Weiler. Weiler had charge of the Company's production and sales and handled most of its financial matters. He had direct supervision over the books and accounts and was also responsible for filing the various income tax returns. He worked under the supervision of R. H. Brown. Some time during 1942 Weiler began manipulating the Company's books of accounts so as to cause them to show an incorrect tax liability to the Federal Government. He made false entries overstating accounts payable and understating sales, and misappropriated small amounts of cash, setting up fictitious book entries to cover up the irregularities. The total of such manipulations over the period May 1, 1942, to November 30, 1942, was $33,840.17. The Company's net income was understated by that amount in the income and excess profits tax return which it filed for that taxable period. The return *100 was prepared by Weiler and was signed by him as assistant treasurer and by R. H. Brown as president of the Company. There were other similar manipulations in 1943 which brought the total for both years to $45,505.96. Weiler deposited all of the funds which he withdrew from the Company in his personal account and a safe deposit box which he maintained at the bank where the Company maintained its only bank account. From time to time during 1942 and 1943 he withdrew funds from the account or the safe deposit box for distribution to R. H. Brown and the other stockholders of the Company, and for certain uses of the Company, as follows: B. J. Weiler (Officer and employee)
$23,925.10
R. H. Brown (Officer and partner)
10,454.69
T. J. Brown (Officer and partner)
2,357.17
Edith Pfefferle (Stockholder and part-
ner)
1,875.00
Mary Nagel (Officer and partner)
1,500.00
Bertha Brown (Stockholder and part-
ner)
825.00
Additional employees' compensation
1,685.00
Special Administrative expense
2,734.00
Political contribution
150.00
Total
$45,505.96 All of the manipulated funds not distributed to the stockholders, as set out above, remained in Weiler's bank account *101 or safe deposit box, or in his possession, until he voluntarily returned them to the Company. The irregularities in the Company's accounts were discovered by the accountants who were enagaged to audit the books in 1943. The audit covered the period January 1, 1943, to September 30, 1943, incl., the first year of the Company's operation as a partnership. After discovering the manipulations the accountants held several conferences with the Company's officers and advised them to make a full disclosure of the matter to the Commissioner of Internal Revenue. Such disclosure was made by the accounts, with the petitioner's authorization, by letter dated December 17, 1943, addressed to the revenue agent in charge, Cleveland, Ohio. R. H. Brown died December 28, 1943. An administrator was appointed for his estate on January 25, 1944, and the estate was closed on November 5, 1945. B. J. Weiler has continued in the employment of the Company (partnership) up to the present time. He received a salary for the taxable year ended November 30, 1942, of $6,783.34, which, in 1946, had been increased to approximately $8,700. The primary purpose of the manipulations of the Company's books and accounts, *102 as described above, was to reduce the Company's federal income and excess profits taxes. The return was false and fraudulent and was filed with the intent to evade tax. Opinion LEMIRE, Judge: The petitioners concede the correctness of the respondent's determination of the deficiencies herein asserted and, as is stipulated, have paid all of such deficiencies. The transferee petitioners also concede that they are liable, as transferees, for any penalty for which the Company may be found liable. They concede also, or stipulate facts to the same effect, that the return which the Company filed for the taxable year 1942 was false and fraudulent, in in that it was based on false entries in the Company's books and accounts. They contend, however, that the fraud is not chargeable to the Company as a corporate entity; that it was committed by Weiler outside of the scope of his official duties with the Company and for his own personal gain; and that his acts were therefore ultra vires and not binding on the Company. We think that these contentions are all without merit. It is well established in the federal tax laws that *103 a corporation cannot escape responsibility for tax returns prepared and filed by its duly authorized officers. L. Schepp Co., 25 B.T.A. 419; Summerill Tubing Co., 36 B.T.A. 347; Saven Corporation, 45 B.T.A. 343. In the last cited case we rejected an argument, similar to that made by the petitioners here, that fraud could not be charged against the corporate taxpayer which had filed false returns signed by its president and treasurer in reliance upon the accountant who had prepared them. We said in our opinion: "* * * But be that as it may, what we consider the short and final answer is that the charge of fraud is here leveled at the petitioner, which is a corporation. Like any other corporation, it could act only through its officers, employees, and agents. Commercial Credit Corporation v. Wells, 228 (N. Y.) App. Div. 402; 240 N.Y.S. 139, 142. Its action can be viewed only as the sum of the acts performed in its name by such of these individuals as were concerned. If petitioner had knowledge through the mind of one of its authorized *104 agents of fact, as we think it unquestionably did, and through the same or another agent deliberately and fraudulently made a contrary statement which was signed and sworn to by still another, all that knowledge and all those acts would nevertheless be attributable to petitioner. New York Central & Hudson River Railroad v. United States, 212 U.S. 481, 492-495; Philadelphia, Wilmington & Baltimore Railroad Co. v. Quigley, 62 U.S. 202, 211; Hill v. Associated Almond Growers (Cal.), 265 Pac. 873, 875; Summerill Tubing Co., 36 B.T.A. 347. In no other manner, it seems to us, would it ever be possible to determine that fraud had been committed by a corporation, although it can not be doubted that a corporation is capable of committing fraud. 10 Fletcher on Corporations, Perm. Ed., 384; L. Schepp Co., 25 B.T.A. 419. It follows in our view that no exculpation of petitioner's purposely deceitful conduct can be drawn from this aspect of the transaction." Here, the person who prepared the return, Weiler, was a duly authorized officer of the Company acting within the scope of his authority. He also signed the return, with *105 R. H. Brown, the Company's president. The petitioners have undertaken to show that Brown did not know that the return was false. While that fact, if true, would not relieve the Company from culpability, we may say in passing that the evidence to the contrary is convincing. A discussion of the evidence at this point would serve no useful purpose here. We think that the facts, as set out above, speak for themselves. There is no denial that Weiler knew that the return was false. We are convinced that he prepared and filed the return, and that he manipulated the Company's books and accounts, with the intent, and for the sole purpose, of evading tax. These facts, we think, meet the burden of proof imposed upon the respondent in fraud cases by section 1112 of the Internal Revenue Code. Decision will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Mary Nagel; Glenn B. Pfefferle; Edith Pfefferle; Estate of Bertha Brown, deceased, William H. Brown, Administrator de Bonis Non with the Will Annexed, Transferee; Estate of Theodore J. Brown, deceased, Marian E. Brown, Executrix; Estate of R. H. Brown, deceased, T. J. Brown, Administrator with Will Annexed.↩