W. S. FARISH & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87840.   Promulgated July 22, 1938.

*Walter E. Barton, Esq.*, and *J. L. Block, C. P. A.*, for the petitioner.

*DeWitt M. Evans, Esq.*, and *Spalding Glass, Esq.*, for the respondent.

154

OPINION.

HILL: Section 104 of the Revenue Act of 1932, as amended by section 214 of the National Industrial Recovery Act, 48 Stat. 195, 207, applicable to petitioner's taxable year ended October 31, 1934, provides that if any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of any internal revenue tax upon the shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for the taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof; and the fact that any corporation is a mere holding or investment company, or that the gains and profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape internal revenue tax.

For the purposes of this section it is further provided that net income shall include dividend deductions and interest on certain obligations of the United States which would be subject to tax in the hands of an individual owner, but that the tax imposed shall not apply if all the shareholders of the corporation include, at the time of filing their returns, in their gross income their entire distributive shares of the net income of the corporation for such year.

The first question for consideration is whether or not petitioner corporation was "formed" for the purpose proscribed by the statute.

W. S. Farish, Sr., was the principal stockholder of the petitioner. The balance of its stock was owned by his wife, son, and daughter, with the exception of qualifying shares. At the time of the organization of petitioner, Farish and his wife owned an aggregate gross estate in excess of $28,000,000, embracing stocks and bonds in excess of $26,000,000. They transferred to the corporation in exchange for its capital stock securities of a fair market value of only $1,245,875, which was less than 5 percent of the securities owned by them.

In 1930 Farish and his wife received dividends from domestic corporations in the amount of $356,656.16, while petitioner during its fiscal year 1930 received like dividends of $74,912.67; in 1931 petitioner's stockholders received in such dividends $312,735.05, and petitioner received $66,078.80; in 1932 the stockholders received $275,624.63 and petitioner received $41,172.02. If the petitioner corporation had been formed for the purpose of enabling its stockholders to escape tax through the medium of permitting its gains and profits to accumulate instead of being distributed as dividends, it would seem reasonable to assume that Farish and his wife would have transferred a much larger portion of their income-producing securities to the corporation.

Apparently respondent does not seriously urge the contention that petitioner was "formed" for the purpose of saving its stockholders from tax *through the accumulation of gains and profits*, but rather that it was "availed of" for such purpose in the taxable year, and was "formed" primarily for the purpose of registering tax losses.

Respondent in his brief asserts that on November 7, 1929, three days after petitioner was organized, Farish transferred certain securities to the corporation, which transfer was characterized as a *sale*, for the purpose of registering losses in the sum of approximately $788,000 on the individual income tax returns of himself and wife, and that they thereby escaped an enormous tax. Respondent further states:

It is realized that this precipitous utilization of the petitioner corporation to avoid surtax by registering tax losses does not in itself bring the petitioner under the scope of Section 104. While it is almost conclusive proof that the petitioner was *formed* to escape surtax of its stockholders, the principal medium or the method chosen to escape tax of its stockholders was by the method of *registering losses* rather than through the medium of *non-distribution of profits* as prescribed by Section 104.

Even if we should assume that the petitioner corporation was originally formed for the purpose of registering tax losses through sales of securities to it by its stockholders, and also was used for such purpose, as contended by respondent, this would not in any event bring petitioner within the provisions of section 104, which imposes a penalty for avoiding tax only through the accumulation of the corporation's gains and profits.

Farish testified that he did not organize petitioner for the purpose of avoiding tax; that his primary purpose was to establish an enterprise that would continue to function after his death, one that in time would become free of debt and to which he could make gifts from time to time for the purpose of increasing its value; that he and his wife expected to make petitioner executor of their respective wills, and trustee of trusts for the benefit of their children. Also, he hoped that his son, who was then in college, would become active in petitioner's affairs, and this son did become treasurer of the petitioner in 1935 after he left college. Secondary reasons for the organization of the corporation were (1) to simplify the transfer of assets of Farish and his wife after their deaths, in that there would result the transfer of the stock of only one corporation instead of the securities of a large number of corporations organized under the laws of various states, and (2) to concentrate management in one company.

There was much evidence tending to support Farish on this point, a detailed discussion of which would unnecessarily prolong this opinion. We have carefully considered all the evidence, as well as the argument on brief of counsel for the respective parties, and it is our opinion that the preponderance of evidence clearly indicates that the actuating motive for the formation of the petitioner corporation was not to enable its shareholders to escape tax through the medium of permitting its gains and profits to accumulate instead of being divided or distributed.

The second and principal question for consideration is whether petitioner was "availed of" for such purpose during the taxable year.

Section 104, and similar provisions contained in section 220 of the Revenue Act of 1926 and prior acts, have been construed by the Board and the courts in numerous cases. For present purposes such discussion need not be repeated here. See, among others, *United Business Corporation of America*, 19 B. T. A. 809; affd., 62 Fed. (2d) 754; *United States* v. *Tway Coal Sales Co.*, 75 Fed. (2d) 336; *Cecil B. DeMille*, 31 B. T. A. 1161; affd., 90 Fed. (2d) 12; *Fisher & Fisher, Inc.*, 32 B. T. A. 211.

Application of the statute obviously depends upon the existence of "gains and profits" which have been accumulated (instead of being divided or distributed) for the purpose of preventing the imposition of tax upon the shareholders. If petitioner corporation had no accumulated gains or profits to be divided or distributed in the taxable year, it could not have been availed of for the proscribed purpose. As to so much, the parties substantially agree.

Petitioner contends that it had no gains or profits, but an operating deficit, whereas respondent holds "that there was not only no deficit,

but that there was a constant and substantial accumulation of surplus during the prior years as well as the fiscal year in question." Thus, solution of the controverted point requires consideration of the radically different methods employed by the parties in their respective computations.

At organization petitioner exchanged its capital stock of the par value of $500,000 for securities having a fair market value of $1,245,875, and assumed indebtedness of the transferors in the amount of $618,084.65. It recorded the stocks and bonds on its books as having a cost to it of $1,118,084.65, which was the aggregate sum of the par value of its capital stock and the indebtedness assumed. The fact that petitioner set up the securities on its books in two assets accounts, namely, "Stocks & Bonds" $708,466.69, which represented cost to the transferors, and "Pro-Ration of Capital Stock" $409,-617.96, we think is immaterial. The two accounts showed assets of a total cost of $1,118,084.65, and allocating to the account designated "Stocks & Bonds" an amount equal to the transferors' cost facilitated the making of petitioner's income tax returns, since that was the cost basis to it in computing gain or loss for income tax purposes upon subsequent sales of the securities. The difference between the fair market value of the securities and cost recorded on books might properly have been credited to paid-in surplus, but for reasons not important here this was not done. For convenience of discussion the book cost will in those circumstances be treated as the equivalent of fair market value.

In arriving at the deficit of $126,229.83 shown by its books at the end of the taxable year, petitioner used the book cost above referred to in computing gain or loss on sales of the securities in question, while respondent employed the transferors' cost, which concededly is the statutory basis for computing *taxable net income*. Since the transferors' cost was less than the fair market value or book cost, petitioner's method of computation tended materially to reduce gains and increase losses over respondent's method, while respondent's basis, as compared with petitioner's, correspondingly increased gains and decreased losses. This directly raises the question whether respondent's method properly may be used in determining whether petitioner, within the meaning of the statute, realized distributable gains and profits, or sustained an operating deficit which impaired its paid-in capital. It is our opinion that such method may not be so used.

Section 112 (b) (5) of the Revenue Act of 1932 provides that no gain or loss shall be recognized if property is transferred to a corporation solely in exchange for its stock and immediately after the exchange the transferors are in control of the corporation; and section 113 (a) (8) provides that the basis for determining gain or loss in respect of such property in the hands of the corporation shall

be the same as it would be in the hands of the transferors. The facts of the present case bring it squarely within these statutory provisions, which require that petitioner's *taxable net income* be computed on the basis of the transferors' cost of the securities exchanged for its capital stock. This rule was adopted because of the fact that upon the exchange no gain or loss was recognized. The gain derived or loss sustained when computed in such manner, however, does not reflect the *true gain or loss as it affects the capital of the corporation.* The rule is applicable only in computing *taxable net income,* that is, the income upon which Congress has levied a tax. Thus, taxable net income is purely a statutory concept, and bears no necessary relation to gains and profits subject to distribution as dividends. Cf. *Charles F. Ayer,* 12 B. T. A. 284, 287; *Ida I. McKinney,* 32 B. T. A. 450, 456; *Susan T. Freshman,* 33 B. T. A. 394, 401. It is the *actual* gain or loss which affects the corporation's capital and determines whether there is earned surplus, or a deficit which impairs the capital. Section 104 itself makes a distinction. The proscribed act is the accumulation of "gains and profits" and not "net income" or "taxable net income." However, the tax provided is 50 percent upon the "net income" as defined in subsection (c).

The cost to a corporation of property exchanged for its capital stock is the fair market value of the stock so exchanged, and where there is no other method of determining the value of the stock, its value is held to be the fair market value of the property exchanged therefor. *Ida I. McKinney, supra; Reliance Investment Co.,* 22 B. T. A. 1287; *Mead Realty Co.,* 21 B. T. A. 1062; *L. H. Philo Corporation,* 16 B. T. A. 130; *Realty Sales Co.,* 10 B. T. A. 1217.

The cost to petitioner of the securities acquired in exchange for its capital stock was not less than $1,118,084.65, the cost entered on its books. If petitioner thereafter had sold such securities for $1,118,084.65, it would neither have derived a gain nor sustained a loss in fact, and its paid-in capital would have remained the same in amount, the form merely being changed from an investment in securities to cash. Under the statute it would have realized taxable gain in the amount of $409,617.96, or the difference between the transferors' cost and the sales price, because it acquired the securities in a tax-free exchange. However, if petitioner has distributed such statutory *taxable income* to its stockholders, it would not have been a distribution out of "gains and profits" but a liquidating dividend which, to that extent, would have invaded its paid-in capital.

Surplus is the amount of net assets over liabilities, including capital stock. *Helvering* v. *Canfield,* 291 U. S. 163; *Willcuts* v. *Milton Dairy Co.,* 275 U. S. 215; *Edwards* v. *Douglas,* 269 U. S. 204, 214. Conversely, a deficit is the excess of the liabilities, including capital stock, over the assets.

At the close of the taxable year 1934 petitioner had total assets of $2,029,096.59. Its total liabilities, including capital stock and paid-in surplus, amounted to $2,155,326.42. The operating deficit, therefore, after deducting the current gains and profits, was $126,229.83, and measured the extent to which its paid-in capital had been invaded. Although the petitioner's books showed net income of $80,131.66 for the fiscal year 1934, there could be no accumulated earnings or profits until the operating deficit was made good.

It is well settled that an impairment of capital or paid-in surplus resulting from operating losses must be restored before any earnings can be available for distribution to the stockholders. *Willcuts* v. *Milton Dairy Co., supra; Loren D. Sale*, 35 B. T. A. 938, 939; *Arthur C. Stifel*, 29 B. T. A. 1145; *Louise Glassell Shorb*, 22 B. T. A. 644; *J. L. Washburn*, 16 B. T. A. 1091; *Crystal Ice Co.*, 14 B. T. A. 682.

Where a corporation, actively engaged in business, has no accumulation of distributable gains or profits but an operating deficit, as in this case, we think it can not be said that its failure to distribute a portion of its paid-in capital equal to its net income computed under section 104 constitutes an availing of the corporation for the purpose of preventing the imposition of tax upon its shareholders.

Petitioner legitimately required the use of considerable capital in the operation of its business, which capital in large part was borrowed. The gains and profits derived in the taxable year were not beyond its reasonable business needs, and did not in any event constitute an accumulation, although not distributed for the reason that, coincident with receipt, they became capital, restoring impairment to that extent.

In *Saenger, Inc.* v. *Commissioner*, 84 Fed. (2d) 23, affirming 33 B. T. A. 135, the corporation was created to take over and hold its sole stockholder's half of the stock of another corporation, which subsequently declared a dividend and credited half of the amount thereof on its books to the taxpayer corporation. The latter corporation paid no dividends but loaned the money to its sole stockholder. It was held that the corporation was both formed and availed of for the purpose described in section 104. That case is clearly distinguishable on the facts from the instant proceeding.

In *Rands, Inc.*, 34 B. T. A. 1094; *Nipoch Corporation*, 36 B. T. A. 662; and *R. L. Blaffer & Co.*, 37 B. T. A. 851, there were accumulations of gains and profits in the taxable years involved which were not absorbed by operating losses, but which it was claimed by petitioners in those cases were entirely wiped out by diminution of the value of capital assets. The Board held in those cases that a mere diminution in value of capital assets in an amount greater than the total of the gains and profits did not prevent the applicability of sec-

tion 104, *supra.* These cases are distinguishable from the instant proceeding in that neither of them involved an impairment of paid-in capital as the result of an operating deficit which precluded distribution of current earnings as dividends.

The ground last above mentioned also distinguishes *Helvering* v. *National Grocery Co.,* 304 U. S. 282. In that case the Board found as a fact (35 B. T. A. 163, 165) that the petitioner corporation was availed of during the taxable year ended January 31, 1931, for the purpose of preventing the imposition of the surtax upon its sole stockholder "through the medium of permitting its gains and profits to accumulate instead of being divided or distributed", and the Supreme Court held that there was ample evidence to support the findings of the Board. At January 31, 1931, the corporation held stocks and bonds valued at $2,989,452.74, an increase during the year of $209,734.67. There was no need of accumulating any part of the year's earnings for the purpose of financing its business. At the close of the taxable year it had on hand cash in excess of all its liabilities, other than capital and reserves, in the amount of $1,136,820.55. Its paid-in capital had not been impaired by an operating deficit nor through depreciation in value of its capital assets. Its actual surplus, consisting apparently of earned surplus, was $7,938,965.54.

In the case at bar, the petitioner corporation did not have sufficient capital to meet the reasonable needs of its business; it operated largely on borrowed capital and at the close of the taxable year, *after deducting current gains and profits,* it had an actual operating deficit of $126,229.83, which to that extent impaired its paid-in capital.

For the reasons indicated above we hold that the present petitioner was neither "formed" nor, in the taxable year, "availed of" for the purpose recited in section 104, *supra,* and, therefore, is not subject to the tax imposed by that section.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

STERNHAGEN, VAN FOSSAN, MURDOCK, TURNER, HARRON, and KERN dissent.