**GPD, INC., Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 74–1223.**

United States Court of Appeals, Sixth Circuit.

Dec. 6, 1974.

---

Scott P. Crampton, Asst. Atty. Gen., Tax Division Dept. of Justice, Washington, D. C., Meyer Rothwacks, Ernest Brown, David English Carmack, Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D. C., for appellant.

Joel J. Morris, Paul R. Trigg, Jr., Detroit, Mich., for appellee.

Before PHILLIPS, Chief Judge, McCREE, Circuit Judge, and RUBIN, District Judge.*

PHILLIPS, Chief Judge.

The question presented in this appeal is whether the taxpayer corporation was "formed or availed of for the purpose of avoiding the income tax with respect to its shareholders . . . by permitting earnings and profits to accumulate instead of being divided or distributed" for the year 1968. Stated differently, is the taxpayer corporation subject to the accumulated earnings tax imposed by § 531 of the Internal Revenue Code of 1954 for the year 1968.[1]

---

* Honorable Carl B. Rubin, Judge, United States District Court for the Southern District of Ohio, sitting by designation.

1. The Sections of the Code cited in this opinion are made an appendix hereto.

In an opinion reported at 60 T.C. 480 (1973), the Tax Court held that the taxpayer corporation was subject to the accumulated earnings tax for 1967. There is no appeal from that part of the Tax Court's decision.

The Commissioner determined a deficiency in the tax for taxpayer's 1968 tax year in the amount of $84,593.87. With Judge Tannenwald dissenting, the Tax Court held that the taxpayer was not subject to the accumulated earnings tax for 1968. We reverse.

## I.

Reference is made to the decision of the Tax Court for a detailed statement of the facts. For the purposes of this appeal the facts are summarized as follows:

GPD, Inc. (taxpayer) was incorporated in February 1954 under the laws of Michigan and has its principal place of business in that State. Continuously since its organization it has been engaged in the sale and distribution of automobile parts in Michigan and Ohio. Taxpayer holds a franchise as exclusive distributor of all Ford "Genuine Parts," except engines, in the Michigan-Ohio area. The parts which taxpayer distributed to its customers, most of whom are Ford automobile dealers, come from the Ford Motor Co. and the Alma Piston Co.

Since taxpayer's incorporation its president and sole or principal shareholder has been Emmet E. Tracy (Tracy), who has never received compensation for services as an officer of the taxpayer corporation. Until 1959, Tracy was taxpayer's sole shareholder. In that year, he began the practice of making gifts of some of the shares he owned to exempt charities. These donated shares were redeemed from time to time by taxpayer. As a result, Tracy was not only at all times taxpayer's principal shareholder, but also held all of taxpayer's shares other than those which he had given to charities and which, at any given time, had not been redeemed. By the end of 1968, all of the shares that Tracy had given to charities during the years 1959 through 1967 had been redeemed and Tracy once again was taxpayer's sole shareholder.

Until October 31, 1967, taxpayer's only authorized stock consisted of 50,000 shares of one-dollar par common stock. On that date, its certificate of incorporation was amended to authorize an issue of 50,000 shares of one-dollar par preferred stock and to reduce the authorized common stock to 25,000 shares without change in its par value.

Taxpayer's net income before taxes for the years 1959 through 1968 ranged from a low of $159,879 for 1959 to highs of $496,636 for 1967 and $596,609 for 1968. Its after-tax net income for the same years ranged from a low of $82,343 for 1959 to highs of $248,946 for 1967 and $278,783 for 1968. It paid no dividends until 1967, when it declared cash dividends of $46,300. In 1968, it declared a cash dividend of $67,440. On December 23, 1968, its Board of Directors voted Tracy, then sole shareholder, a stock dividend of 5000 shares of one-dollar par seven-dollar cumulative preferred stock.

As stated above, Tracy, then taxpayer's sole shareholder, in 1959 made the first of a series of gifts of some of the shares he owned to exempt charities and made one or more further gifts in each of the years 1960 to 1967. These gifts were mostly of taxpayer's common stock, then the only class of stock outstanding, and Tracy took deductions based upon the book value of the shares donated. The gifts, made principally to Catholic Foreign Mission, St. Mary's Church, Jesuit Seminary Guild and Guest House, Inc., aggregated 7190 shares during the years 1959 through 1967. Tracy took deductions for the gifts in the aggregate amount of $728,325.

In 1961, 1964, 1966 and 1968, taxpayer redeemed the shares that in prior years had been donated to the exempt charities, paying out during these years a total amount of $900,237 in redemption of the 7190 shares. Of this amount, $434,-460 was paid out in 1968 in redemption of the 1820 shares then outstanding in

the hands of the charitable donees. We re-emphasize that at the end of 1968, all the shares which Tracy had given to the charities had been redeemed, and he again was taxpayer's sole shareholder.

Taxpayer's accumulated earnings and profits (without giving effect to the 1968 redemption) as found by the Tax Court was as follows:

| | |
|---|---|
| December 31, 1966 | $1,379,749.18 |
| December 31, 1967 | $1,582,396.05 |
| December 31, 1968 | 1,793,739.08 |

With respect to the $434,460 paid by the taxpayer for the 1968 redemption, $1820 was chargeable to its capital account and $432,640 was chargeable to its earnings and profits. When the 1968 redemption is taken into account, the taxpayer's earnings and profits as of December 31, 1968, reflect a net decrease as compared to 1967.

The joint federal income tax returns filed by Tracy and his wife for 1967 and 1968 reported taxable income of $290,-326.46 and $283,954.85, respectively, and tax liability of $174,208 and $182,478, respectively. If taxpayer's after tax income for 1967 and 1968 had been distributed in its entirety the income tax liability of Tracy and his wife would have increased to $248,098.82 for 1967 and to $317,688.52 for 1968.

Pursuant to § 534(b) of the Internal Revenue Code of 1954, notification was given taxpayer on November 10, 1970, that the Commissioner proposed a notice of deficiency for 1967 and 1968, including an amount with respect to the tax on accumulated earnings imposed by § 531. Taxpayer did not file a responding statement to challenge the proposed deficiency, as permitted by § 534(c). On April 14, 1971, a notice of deficiency was mailed to taxpayer asserting deficiencies in the § 531 tax in the amounts of $79,-416.93 and $84,593.87 for 1967 and 1968, respectively.

The Tax Court rejected taxpayer's contentions that it had accumulated earnings for the reasonable needs of its business and, accordingly, upheld the Commissioner's assessed deficiency for

1967. Taxpayer does not challenge this determination. With respect to 1968, however, the Tax Court accepted taxpayer's argument that it had no increase in its total earnings and profits for that year because of its stock redemption, and that the Commissioner erred in assessing an accumulated earnings tax against it for that year. The Commissioner appeals from the decision expunging his deficiency determination for 1968.

## II.

By enacting the accumulated earnings tax, Congress sought "to deter use of a corporate entity to avoid personal income taxes." United States v. Donruss Co., 393 U.S. 297, 303, 89 S.Ct. 501, 505, 21 L.Ed.2d 495 (1969). "The purpose of the tax 'is to compel the company to distribute any profits not needed for the conduct of its business so that, when so distributed, individual stockholders will become liable' for taxes on the dividends received." Id. citing and quoting Helvering v. Chicago Stock Yards Co., 318 U.S. 693, 699, 63 S.Ct. 843, 87 L.Ed. 1086 (1943).

Section 531 imposes an annual tax on the accumulated taxable income of every corporation described in § 532. That section, insofar as is applicable here, makes the tax applicable to "every corporation . . . formed or availed of for the purpose of avoiding the income tax with respect to its shareholders . . ., by permitting earnings and profits to accumulate instead of being divided or distributed." Thus, two factors must be presented before the tax can be imposed: 1) the proscribed purpose of avoiding the income tax for its shareholders, and 2) the proscribed conduct of permitting earnings and profits to accumulate instead of being divided or distributed. American Trading & Production Corp. v. United States, 362 F.Supp. 801, 804 (D.Md.1972), affirmed, 474 F.2d 1341 (4th Cir. 1973). The issue in this case involves the latter of the two factors.

The taxpayer concedes that the 1968 redemption did not reduce its accumulat-

ed taxable income as defined in § 535, and that it had such income during 1968. It is also undisputed that the 1968 stock redemption caused a net decrease in the earnings and profits for 1968 as compared to 1967.[2]

The Tax Court interpreted § 532 as requiring an accumulation of earnings and profits in the taxable year as a condition precedent to the imposition of the accumulated earnings tax. Since there was no accumulation during 1968, the court held the accumulated earnings tax to be improper for that year. The arguments presented to the Tax Court and its rationale for the holding can be best summarized by quoting at length from the majority opinion of that court:

"Respondent takes the position that an increase in earnings and profits during the taxable year is not a requirement for imposition of the accumulated-earnings tax. Respondent argues that where the evidence shows that a taxpayer was availed of for the purpose of avoiding the income tax with respect to its shareholders a restrictive construction of the statute would thwart the legislative purpose for the accumulated-earnings tax. In support of his position, respondent argues that the tax is levied on the 'accumulated taxable income' and not on the increase in 'earnings and profits' and that in 1968 petitioner had 'accumulated taxable income' as defined in section 535 even though it had no increase in 'earnings and profits.'

"Petitioner contends that although the accumulated-earnings tax is measured by a percentage of the 'accumulated taxable income' and it had 'accumulated taxable income' as defined in section 535 for the year 1968, under section 532 the accumulated-earnings tax is imposed only on corporations formed or availed of for the purpose of avoiding the income tax with respect to its shareholders 'by permitting earnings

and profits to accumulate instead of being divided or distributed.' Petitioner argues that since it distributed all of its 1968 earnings and profits in redemption of stock, it did not permit 'earnings and profits to accumulate instead of being * * * distributed' in that year. Petitioner contends that therefore under the plain language of section 532 it is not subject to the accumulated-earnings tax in 1968.

"In support of its position, petitioner cites our holdings in W. S. Farish & Co., 38 B.T.A. 150 (1938), affd. 104 F.2d 833 (C.A.5, 1939); Corporate Investment Co., 40 B.T.A. 1156 (1939); American Metal Products Corp., 34 T.C. 89 (1960), affd. 287 F.2d 860 (C.A.8, 1961). In each of these cases we held that a corporation which had no increase in its earnings and profits in a particular year was not formed or availed of in that year for the purpose of permitting its earnings and profits to accumulate instead of being distributed.

"In W. S. Farish & Co., supra at 158, we stated 'taxable net income is purely a statutory concept, and bears no necessary relation to gains and profits subject to distribution as dividends. * * * The proscribed act is the accumulation of 'gains and profits' and not 'net income' or 'taxable net income.'

"Respondent contends that the Farish case is distinguishable from the instant case since under our holding in that case the taxpayer had a deficit in earnings and profits.

"In Corporate Investment Co., supra, we held that the 'gains and profits' referred to in the section of the tax law imposing accumulated-earnings tax were the 'gains and profits of the taxable year.' In that case the taxpayer had substantial profits accumulated in years prior to the year there in issue. After discussing whether

**2.** Section 312 provides that "[a] distribution of property by a corporation with respect to its stock" decreases its earnings and profits to the extent that it is not chargeable to the capital account. Section 316(a) provides that in the absence of a contrary provision every distribution is made out of the most recently accumulated earnings and profits.

various items, including accruals of amounts due to the taxpayer's sole stockholder and interest thereon, should be used to reduce the current year's earnings and profits to such an extent that a distribution by the taxpayer to its shareholder eliminated most of the current year's earnings and profits, we stated (40 B.T.A. at 1172):

> the use of the words 'to accumulate' instead of some such phrase as 'to remain accumulated' is significant. Earnings of prior years may remain accumulated during the year but are not permitted 'to accumulate' during that year. If Congress had intended to penalize the corporation for accumulating a surplus in prior years or for failing to distribute such a surplus in the taxable year, it would hardly have measured the penalty by the earnings of the current year or relieved the corporation from the penalty upon condition that the earnings of the current year were distributed to or reported by the stockholders. * * * [Fn. omitted.]

"In American Metal Products Corp., *supra*, we held on facts very similar to the facts in the instant case that a corporation which had no increase in its earnings and profits for a certain year was not subject to the accumulated-earnings tax. In so holding we stated (34 T.C. at 104):

> With respect to the year 1953, the balance sheet of Adler Corporation reveals that the total of its surplus and surplus reserves as of the end of the year 1953 ($657,934.74) was less than the total amount of its surplus and surplus reserves as of the end of the preceding year ($658,398.66) and, accordingly, that there was no accumulation of 'earnings or profits' by Adler Corporation during that year. This fact has not been called to our attention or discussed by either of the parties. It cannot, however, be ignored. As our findings indicate, this situation apparently resulted

from the payment of an 'Additional Federal tax' which, though nondeductible in determining the 'section 102 net income' upon the basis of which the surtax would otherwise be computed (section 102(d)(1)(A)), is nevertheless to be considered in determining whether the corporation was 'availed of for the purpose of preventing the imposition of the surtax upon its shareholders * * * through the medium of permitting earnings or profits to accumulate instead of being divided or distributed.' As was stated in W. S. Farish & Co., 38 B.T.A. 150, 158, affd. 104 F.2d 833, 'taxable net income is purely a statutory concept and bears no necessary relation to gains and profits subject to distribution as dividends. * * * The proscribed act is the accumulation of 'gains and profits' and not 'net income' or 'taxable net income.' Each year is to be considered separately, W. S. Farish & Co., *supra*; Corporate Investment Co., 40 B.T.A. 1156, 1171. Under the circumstances presented herein, section 102 is not applicable to the Adler Corporation for the year 1953. [Fn. omitted.]

"Respondent does not contend that the Corporate Investment Co. and American Metal Products Corp. cases are distinguishable from the instant case but rather contends that those cases were incorrectly decided and asks that we reconsider our holding in those cases, particularly in light of the facts in the instant case. Respondent states that by managing the years in which he made gifts of petitioner's stock to charities and the years in which he had petitioner redeem that stock, Tracy, petitioner's major or sole stockholder, has been able to obtain not only the tax advantage of charitable deductions for himself far in excess of his base in the stock contributed to the charities but also if we follow our holding in American Metal Products Corp., *supra*, to have petitioner avoid the accumulated-earnings tax by re-

deeming stock of a charity which is exempt from income tax on its gain from the redemption. In considering a similar argument in Corporate Investment Co., *supra*, we stated at page 1171:

> Although the contracts may have avoided or delayed tax on Munroe, they do not bring section 104 into play, since their use did not serve to avoid surtax on Munroe through the medium of permitting the gains and profits of this petitioner to accumulate instead of being distributed as taxable dividends to Munroe. Munroe may have been tax conscious and his contracts may have been cleverly drawn to save him from tax, but still this petitioner is not subject to tax under section 104 unless the facts are within the provisions of that section, which Congress has made so definite and specific.

"The *Corporate Investment* opinion was reviewed by the Court and in a dissenting opinion, Judge Opper stated that whether the 'gains and profits' referred to in the statute should in the ordinary case be considered the current year's net gain, 'It seems obvious that Congress could not have intended the term "gains and profits," whether net or gross, to mean those resulting from an artificial calculation pursuant to a clever device for frustrating the fundamental purpose of the very provision in which the term appears.' Respondent's argument that if the reduction in the current year's earnings and profits was a part of a tax-avoidance plan, the lack of an increase in such earnings and profits in a particular year should not cause the corporation not to be subject to the accumulated-earnings tax, was considered and rejected by the Court in the Corporate Investment Co. case." 60 T.C. at 489–492. (Footnotes omitted.)

The Commissioner contends now, as he did in the Tax Court, that the statute does not require an accumulation of earnings and profits for the year in which the tax is imposed. He asserts that the phrase "permitting earnings and profits to accumulate instead of being divided or distributed" refers "not only to current profits and earnings . . . but, rather, to the entire amount of the corporation's undistributed profits and earnings." The Commissioner argues that this interpretation is consistent with the purpose behind the statute, the statutory scheme and the legislative history of the accumulated earnings tax provisions.

### III.

In analyzing the accumulated earnings tax provisions, it is important to note that "taxable income" and "earnings and profits" are separate and distinct statutory terms. Taxable income serves as a measure of the income tax and related taxes assessed against a particular taxpayer, while earnings and profits reflect a corporation's capacity to pass along tax consequences to its shareholders through distributions to them.

> "Earnings and profits, as a source of dividend payments, is a statutory term. Although it is not defined in the statute, the statute does contain a number of specific rules governing the computation. As a result earnings and profits bear no exact relation either to taxable income or to earnings as determined by normal corporate accounting practice, either of which may, of course, in itself be controversial. The concept of 'earnings and profits' leans at one time toward the accounting standard and again toward the taxable income standard. It is clear, therefore, that 'earnings and profits' is much broader than 'taxable income.' It is an economic concept which the tax law has utilized to approximate a corporation's power to make distributions which are more than just a return of investment. In most cases the closest approximation can probably be obtained by applying the corporate accounting standard. . . ." (Footnotes omitted.) 1 Mertens, The Law of Federal Income Taxation, § 9.28 (1969 ed.)

This distinction has been recognized by the Commissioner. In Revenue Ruling 70–497, 1970–2 C.B. 128, the Commissioner stated that the tax exempt interest income was not includible in accumulated taxable income as defined in § 535, but was to be included in earnings and profits for the purpose of determining whether they have been accumulated beyond the reasonable needs of the taxpayer's business.

The accumulated earnings tax originated in the Tariff Act of 1913, 38 Stat. 114. Section II(A)(2), 38 Stat. 166, provided:

"For the purpose of this additional tax the taxable income of any individual shall embrace the share to which he would be entitled of the gains and profits, if divided or distributed, whether divided or distributed or not, of all corporations, . . . *formed or fraudulently availed of for the purpose of preventing the imposition of such tax through the medium of permitting such gains and profits to accumulate instead of being divided or distributed;* and the fact that any such corporation, joint-stock company or association, is a mere holding company, or that the gains and profits are permitted to accumulate beyond the reasonable needs of the business shall be prima facie evidence of a fraudulent purpose to escape such tax; but the fact that the gains and profits are in any case permitted to accumulate and become surplus shall not be construed as evidence of a purpose to escape the said tax in such case unless the Secretary of the Treasury shall certify that in his opinion such accumulation is unreasonable for the purposes of the business. . . ." (Emphasis added.)

Unlike § 531, the 1913 Act taxed the shareholders directly by requiring them to include their shares of the gains and profits of the corporation as part of their taxable income. Thus, if a corporation were formed or availed of for the proscribed purpose, its gains and profits were treated as though they had been distributed. The Senate debate between Senators Borah and Williams prior to the passage of the Act indicates that the term "permitting [such] gains and profits to accumulate instead of being divided or distributed" refers to accumulated as well as current gains and profits.

"Mr. BORAH. Mr. President, * *, let me put this concrete proposition. Suppose we have an automobile company, which I heard something about the other day, formed several years ago, of course, a legitimate corporation, which was not formed for the purpose of doing these things. The statement was to the effect that one individual drew down several million dollars of dividends each year. Suppose they had seen fit not to declare a dividend this year, the question which I desire to put to the Senator is, Could the Secretary of the Treasury tax that dividend which ought to have been distributed?

"Mr. WILLIAMS. He must first proceed to consider the question whether that corporation as such has been fraudulently availed of for the purpose of permitting parties to escape this additional tax, and considering that question and deciding upon it himself he would consider whether this surplus were too large for the reasonable purposes of that business. If he concluded that the accumulations were too large for the reasonable purposes of that business, and that the fraudulent intent existed, he would then certify that, in his opinion, such accumulation was unreasonable for the purposes of the business. Whereupon it would become prima facie evidence to the fact that it was being fraudulently availed of to escape the tax, and the internal-revenue commissioner would proceed to assess the property.

"Mr. BORAH. The Senator, then, takes the position that the words 'availed of' would enable the Secretary of the Treasury to review the conditions of any corporation.

"Mr. WILLIAMS. Provided that they had accumulations of surplus un-

reasonable for the character of the business they were carrying on." 50 Cong.Rec. Part 6, p. 5319 (63rd Cong., 1st Sess.).

The Revenue Act of 1916 contained language substantially identical to § II(A)(2) of the Act of 1913. Section 3, Revenue Act of September 8, 1916, ch. 463, 39 Stat. 758. The Revenue Act of 1919 also made no changes relevant to the issue at bar. Section 220, Revenue Act of February 24, 1919, ch. 18, 40 Stat. 1072.

The thrust of these sections was that the shareholders were taxed in the same manner as partners in a partnership. S.Rep.No.617, 65th Cong., 3rd Sess., 1939–1 C.B. (Part 2) 117, 120; H.Rep.No. 350, 67th Cong., 1st Sess., 1939–1 C.B. (Part 2) 168, 177–78. Since shareholders were to be taxed on their distributive shares of the corporation's gains and profits in the manner of a partnership and because certain stock redemptions would not reduce their distributive shares, Congress would not have intended the phrase "permitting such gains and profits to accumulate instead of being divided or distributed" to refer solely to current gains and profits. Otherwise, the congressional desire that the distribution be pro rata, as from a partnership, could be avoided easily by a preferential distribution that would eliminate current gains and profits.

Doubts about the constitutionality of levying the tax directly on the shareholders, engendered by the Supreme Court's decision in Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920), led Congress to pass the Revenue Act of 1921, § 220, Act of November 23, 1921, c. 136, 42 Stat. 247. See H.Rep.No. 350, supra; S.Rep.No.275, 67th Cong., 1st Sess., 1939–1 C.B. (Part 2) 181, 192–93. This Act shifted the incidence of the tax from the shareholders to the corporation itself. However, the Act gave the shareholders the option of subjecting themselves to a tax on the corporation's net income. The statute continued the reference to the term "permitting [its] gains and profits to accumulate." The

House and Senate Reports, supra, do not indicate any change in the meaning of the term.

Section 220 of the Revenue Act of 1924, c. 234, 43 Stat. 277, eliminated the election afforded to shareholders by the Act of 1921 of including their distributive shares of the corporation's net income in their individual returns. This option was eliminated "in order to place a more effective check upon . . . [the] evasion of surtaxes." S.Rep.No. 398, 68th Cong., 1st Sess., 1939–1 C.B. (Part 2) 266, 284. Again, no change in the meaning of the term "permitting its gain and profits to accumulate instead of being divided or distributed" was intended. See S.Rep.No.398, supra; H.Rep.No. 179, 68th Cong., 1st Sess., 1939–1 C.B. (Part 2) 241, 256–57.

The Revenue Act of 1926 reinstated the shareholder's option of having the corporation's gains and profits taxed to them. Section 220(e), Revenue Act of February 26, 1926, c. 27, 44 Stat. 34. That Act provided that the corporation would be exempt from the tax if all shareholders included in their gross income "their entire distributive share, whether distributed or not, of the net income of the corporation for such year." The Senate Report accompanying the Act stated:

"Section 220(e): The existing law, in the case of corporations formed or availed of for the purpose of preventing the imposition of a surtax by failure to distribute the earnings, imposes upon the net income of such corporations a tax of 50 per cent in addition to the regular corporation income tax. The committee recommends the addition of a provision that this tax shall not apply in any year if all the stockholders include in their gross income, and pay surtax upon, their entire distributive share, whether distributed or not, of the earnings of the corporation for such year. If the surtax is thus paid the failure to distribute the earnings has not resulted in any avoidance of tax and the reason for the imposition of the 50 per cent tax on the

corporation no longer exists. The amendment also provides that upon any subsequent distribution by the corporation out of its earnings and profits for the year in which the shareholders have thus paid the surtax, the amounts distributed to the same shareholder who paid a tax on his distributive share shall be exempt from tax." S.Rep.No.52, 69th Cong., 1st Sess., 1939–1 C.B. (Part 2) 332, 348–49.

See also H.Rep.No.356, 69th Cong., 1st Sess., 1939–1 C.B. (Part 2) 361, 365. The Revenue Act of 1928, § 104, c. 852, 45 Stat. 814, and of 1932, c. 209, 47 Stat. 195, as amended by Act of June 16, 1933, c. 90, Title 2, § 214, 48 Stat. 207, continued this provision.

In the course of the enactment of the Revenue Act of 1928, the House proposed to separate personal holding companies from other corporations for the purpose of the accumulated earnings tax so that all corporations determined to be personal holding companies would automatically be subject to the tax. The House also proposed to replace the words "to accumulate" with "to remain accumulated." H.R. 1, 70th Cong., 1st Sess., § 104(c). The House Report accompanying this bill described the accumulated earnings provisions applicable to corporations other than personal holding companies as "substantially the same" as its predecessors and went on to describe the proscribed activity as one to "permit . . . profits to remain accumulated, in order to evade surtaxes." H.Rep. No.2, 70th Cong., 1st Sess., 1939–1 C.B. (Part 2) 384, 395–96. The Report states:

"Section 104(c) is substantially the same as section 220 of the 1926 Act in its application to corporations which are not within the definition of a 'personal holding company,' and provides that if any corporation, other than a personal holding company, is formed or availed of to *permit its profits to remain accumulated,* in order to evade surtaxes, a tax of 25 per cent of the net income, increased by dividends and tax-free interest received, shall be imposed." (Emphasis added.)

The Senate rejected the distinction between personal holding companies and other corporations and reverted to the words "to accumulate" as used in the Act of 1926. The Senate Report does not imply that the phrase "to accumulate" differed from the phrase "to remain accumulated." S.Rep.No. 960, 70th Cong., 1st Sess., 1939–1 C.B. (Part 2) 409, 417, 426. The equivalency of these phrases indicates that Congress was not referring solely to current gains and profits in its description of the proscribed activity.

Section 102 of the Revenue Act of 1934, for the first time, permitted a corporation subject to the tax to deduct dividends paid to its shareholders. Revenue Act of May 10, 1934, § 102, c. 277, 48 Stat. 702. Section 102(d) of the Act contained a provision substantially the same as the election provision of the previous Acts. It provided that the surtax would not apply "if all the shareholders of the corporation include (at the time of filing their returns) in their gross income their entire *pro rata* shares, whether distributed or not, of the 'adjusted net income' of the corporation for such year." (Emphasis added.) The adjusted net income was defined in § 102(c) of the Act and reflected a deduction for dividends paid to the shareholders during the taxable year. The Committee Reports accompanying the Act do not indicate that any change in the term "permitting gains and profits to accumulate instead of being divided or distributed" was intended. Rather, the Reports indicate that the Act continued the existing law except to the extent of a revision in the surtax rate and allowance of the dividends paid deduction. H.Rep.No.704, 73d Cong., 2d Sess., 1939–1 C.B. (Part 2) 554, 562–63; S.Rep. No.558, 73rd Cong., 2d Sess., 1939 C.B. (Part 2) 586, 609–10. The allowance of the dividends paid deduction indicated Congress' desire to allow dividends paid to the shareholder during the taxable year to be taken into account in determining the amount of the surtax. Only when the dividends paid deduction equaled the net income as adjusted up-

ward by § 102(c), would the corporation not be liable for the surtax.

We construe the shareholder election provisions of the 1934 Act and previous acts to be an indication of congressional disapproval of non-*pro rata* distribution as a means of evading the tax and to establish a statutory scheme exempting the corporation from the tax only when the entire amount of its adjusted net income is included pro rata in the shareholder's gross income. When such income has been included, a corporation has not been availed of for the proscribed purpose.

The Revenue Act of 1936 changed the term "gains and profits" to "earnings or profits." Section 102, Revenue Act of June 22, 1936, c. 690, 49 Stat. 1676, as amended by Act of August 26, 1937, c. 817, Titles I, VI, §§ 2, 601, 50 Stat. 815, 830. This change was not intended to alter the existing law, but rather to describe the fund out of which taxable dividends were paid. S.Rep.No.2156, 74th Cong., 2d Sess., 1939–1 C.B. (Part 2) 678, 689.

The Revenue Act of 1938 discontinued the shareholders' option of including their share of the corporation's income in favor of the consent dividend credit. Section 102, Revenue Act of May 28, 1938, c. 289, 52 Stat. 483. Again, the Committee Reports accompanying the Act do not indicate that Congress intended to change the already well established meaning of the phrase "permitting earnings or profits to accumulate instead of being divided or distributed." H.Rep. No.1860, 75th Cong., 3d Sess., 1939–1 C.B. (Part 2) 728, 745–48, 750; S.Rep.No. 1567, 75th Cong., 3d Sess., 1939–1 C.B. (Part 2) 779, 790–91. The House Report stated that "the bill continues the policy of levying a special tax on corporations formed or availed of for the purpose of preventing the imposition of the surtax

upon its shareholders or the shareholders of any other corporation, as did the Revenue Act of 1936." H.Rep.No.1860, *supra,* at 750.

The "consent dividend deductions" of the 1938 Act was retained in subsequent Revenue Acts and forms the basis of § 561's deduction for dividends paid, including consent dividends as determined under § 565.[3] Section 562(c) excludes from the dividends paid deduction:

> "[t]he amount of any distribution . . . unless such distribution is pro rata, with no preference to any share of stock as compared with other shares of the same class, and with no preference to one class of stock as compared with another class except to the extent that the former is entitled . . . to such preference."

The Revenue Act of 1954, c. 736, 68A Stat., continued the reference to the term "permitting earnings and profits to accumulate instead of being divided or distributed." The Committee Reports accompanying the Act do not indicate that any change in the meaning of the phrase was intended. H.Rep.No.1337, 83d Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News 4017, 4077–4080, 4311–4313; S.Rep.No.1622, 83rd Cong., 2d Sess., 1954 U.S.Code Cong. & Admin. News 4621, 4700–4704, 4954–4958; H.Rep.No.2543, 83rd Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News 5280, 5309–5310. Indeed, the Senate and House Reports stated that § 532, insofar as is applicable to the issue in this case, corresponded to existing law. 1954 U.S. Code Cong. & Admin.News at 4311 and 4954.

■ We are of the view that the legislative history and the statutory schemes of the Revenue Acts from 1913 to the present show that Congress did not intend . to require an accumulation of "earnings and profits" in the taxable

---

**3.** Section 535(a) defines the term "accumulated taxable income" so as to include a deduction for dividends paid as defined in § 561. Section 561 defines the dividends paid deduction so as to include a deduction for the consent dividends of the taxable year. The thrust of the consent dividends provision is to allow a shareholder of consent stock to include the amount specified in a consent as a dividend as if it had been distributed in money.

year as a condition precedent to imposition of the accumulated earnings tax. This is evidenced by repeated efforts on the part of the Congress in amending the accumulated earnings tax provisions so as to make it more difficult to avoid the tax and by the strong congressional policy of encouraging *pro rata* distributions as a means of avoiding or lessening the tax.

## IV.

The Internal Revenue Code is explicit in providing that a non-*pro rata* redemption does not reduce the "accumulated taxable income," and taxpayer has not disputed this point. There is no question that taxpayer had substantial amounts of income taxable under § 531 for 1968. Through the adjustments to taxable income in § 535 of the 1954 Code, Congress has effectuated its opposition to excess accumulations of earnings and profits by corporations to save their shareholders from the income tax and has made the resulting amount, i. e., accumulated taxable income, determinative of the issue whether or not there are current earnings and profits that are being used to avoid the tax. To hold as the Tax Court did, that an accumulation of earnings and profits during the tax year is required, would mean that Congress has frustrated the purpose behind the surtax by allowing non-*pro rata* redemptions to reduce current earnings and profits to such an extent that the corporation would not be subject to the surtax, while at the same time providing that the same redemptions have no effect on the amount of the surtax. We are unwilling to construe the statute as intending such an inconsistency. We are mindful of the admonition that courts "should construe laws in harmony with the legislative intent and seek to carry out legislative purpose." Foster v. United States, 303 U.S. 118, 120, 58 S.Ct. 424, 425, 82 L.Ed. 700 (1938). The "intention of the lawmaker is to be deduced from a view of every material part of the statute." Hellmich v. Hellman, 276 U.S. 233, 237, 48 S.Ct. 244, 245, 72 L.Ed. 544 (1928).

Section 532(a) does not of its own terms require an accumulation of current earnings and profits, nor does it require any particular amount of accumulation. The section refers to the proscribed activity of permitting earnings and profits to accumulate, and is unlike § 531 which speaks to the accumulated taxable income for the taxable year. Indeed, if the corporation were *formed* for the proscribed purpose of avoiding the income tax on its shareholders, there would be no need for an annual redetermination such as would be required if the corporation were being *availed of* for the proscribed purpose. Had Congress intended a limitation in the scope of the term "permitting earnings and profits to accumulate instead of being divided or distributed", it could have so specified as it did in § 535(c)(1)(A), which allows an accumulated earnings credit against taxable income for "an amount equal to such part of the *earnings and profits for the taxable year* as are retained for the reasonable needs of the business."

Also, with respect to the accumulated earnings credit, the Senate Report specifically states that the amount of earnings and profits for a taxable year that may be retained for the reasonable needs of the business is determined by taking into account the amount of earnings and profits that have been accumulated in prior years. S.Rep.No.1622, *supra*, 1954 U.S.Code Cong. & Admin.News at 4957. If past accumulations are relevant to the propriety of current accumulations, we do not understand how they could be irrelevant in determining that the corporation was availed of for the proscribed purpose. We hold that past accumulations are highly relevant in effecting the congressional intent.

## V.

In Ostendorf-Morris Co. v. United States, 26 A.F.T.R.2d 70–5369, 70–2 U.S. T.C. ¶ 9550, pp. 84,334, 84,338 (N.D.Ohio 1968), a case involving the same issue as the case at bar, the District Court noted that the rationale and holding of the

Tax Court had the effect of allowing a double accumulated earnings credit:

> "In a particular tax year (first year) a taxpayer determines that the reasonable needs of the business require the use of some of that year's earnings and profits for the purpose of redeeming a particular shareholder's shares. Assuming, arguendo, that this is a purpose which would not run afoul of the accumulated earnings tax provisions, the amount of earnings and profits needed for such purpose would not be subject to the accumulated earnings tax either if they were used for that purpose during the particular year or were accumulated for distribution in the subsequent year. Under plaintiff's construction of section 532, if the earnings and profits were distributed during the first year rather than accumulated, the transaction could have no bearing on the taxpayer's potential liability for accumulated earnings taxes on the subsequent year's 'accumulated taxable income'. However, if the earnings and profits were accumulated for distribution in the subsequent year, the accumulated earnings tax could not be imposed on the subsequent year's 'accumulated taxable income' if the amount of earnings and profits previously retained (for the purpose of the redemption) equaled or exceeded the earnings and profits for the year when the redemption occurred. Under the latter circumstance, it is clear that the taxpayer would be receiving the equivalent of a double credit for the earnings and profits used for the purposes of the redemption.
>
> "Certainly, Congress never intended such an absurd result."

The same court pointed out another unreasonable result flowing from the Tax Court's interpretation of the statute:

> "Since section 532 does not speak in terms of permitting any particular amount of earnings and profits to accumulate it seems clear that even under plaintiff's construction of § 532 *all* of its 'accumulated taxable income' could have been subjected to the accumulated earnings tax if all but one cent ($.01) of its earnings and profits for the taxable year had been distributed pursuant to the redemption of Mr. Cloak's shares. On the other hand, if *exactly all* of the plaintiff's earnings and profits for the taxable year had been distributed pursuant to the redemption of Mr. Cloak's shares, *none* of the 'accumulated taxable income' could have been subjected to the accumulated earnings tax. In other words, under plaintiff's construction of § 532, a matter of one cent could of itself be determinative of whether the plaintiff is entitled to the refund of $105,000 in accumulated earnings taxes. Such an unreasonable result certainly was never contemplated by Congress." *Id.* at 84, 337–338.

The dissenting opinion of Judge Tannenwald in the present case describes the reasoning of the District Court in *Ostendorf-Morris* as "totally persuasive." 60 T.C. at 497.

## VI.

■■ In the case at bar, the repetitive cycles of gifts of stock to exempt charities, followed in a subsequent year by redemptions of the donated stock, demonstrate a purpose of avoiding income taxes owed by Tracy. The charitable deductions enhanced by the retention of earnings in the corporation, provided shelters against other taxable income, and the periodic redemptions of the donated stock permitted Tracy, the controlling shareholder, to retain control over the taxpayer corporation. The Tax Court found that this scheme continued, at least, through 1970, with aggregate contributions by Tracy to the Jesuit Seminary Guild of 3,600 shares ($360,000) for the years 1968 through 1970 of taxpayer's preferred stock which Tracy had received as a stock dividend in 1968.

Since the Tax Court determined that taxpayer was availed of for the proscribed purpose of avoiding the income tax on its shareholders in 1967 and be-

cause the redemption of the donated stock in 1968 was a necessary feature of the method of avoiding the tax, it would appear that taxpayer was availed of for the proscribed purpose during 1968, the year of the redemption. The issues of whether accumulations are beyond the reasonable needs of the business and whether a corporation has been availed of for the proscribed purpose are, however, questions of fact. Helvering v. National Grocery Co., 304 U.S. 282, 291–295, 58 S.Ct. 932, 82 L.Ed. 1346 (1938); Kirlin Corp. v. C. I. R., 361 F.2d 818, 819 (6th Cir. 1966). Because the Tax Court's decision with respect to the 1968 accumulated earnings tax was based on an erroneous interpretation of § 532(a), the case is reversed and remanded for further proceedings with respect to the 1968 assessment not inconsistent with this opinion.

No costs are taxed. Each party will bear its own costs on this appeal.

### APPENDIX

**§ 312. Effect on earnings and profits**

*(a) General rule.*—Except as otherwise provided in this section, on the distribution of property by a corporation with respect to its stock, the earnings and profits of the corporation (to the extent thereof) shall be decreased by the sum of—

(1) the amount of money,

(2) the principal amount of the obligations of such corporation, and

(3) the adjusted basis of the other property,

so distributed.

\*　　\*　　\*　　\*　　\*　　\*

*(e) Special rule for partial liquidations and certain redemptions.*—In the case of amounts distributed in partial liquidation (whether before, on, or after June 22, 1954) or in a redemption to which section 302(a) or 303 applies, the part of such distribution which is properly chargeable to capital account shall not be treated as a distribution of earnings and profits.

\*　　\*　　\*　　\*　　\*　　\*

**§ 316. Dividend defined**

*(a) General rule.*—For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

(1) out of its earnings and profits accumulated after February 28, 1913, or

(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.

\*　　\*　　\*　　\*　　\*　　\*

**§ 531. Imposition of accumulated earnings tax**

In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of—

(1) 27½ percent of the accumulated taxable income not in excess of $100,000 plus

(2) 38½ percent of the accumulated taxable income in excess of $100,000.

\*　　\*　　\*　　\*　　\*　　\*

**§ 532. Corporations subject to accumulated earnings tax**

*(a) General rule.*—The accumulated earnings tax imposed by section 531 shall apply to every corporation (other than those described in subsection (b) ) formed or availed of for the purpose of avoiding

the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed.

\* \* \* \* \* \*

## § 534. Burden of proof

(a) General rule.—In any proceeding before the Tax Court involving a notice of deficiency based in whole or in part on the allegation that all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business, the burden of proof with respect to such allegation shall—

(1) if notification has not been sent in accordance with subsection (b), be on the Secretary or his delegate, or

(2) if the taxpayer has submitted the statement described in subsection (c), be on the Secretary or his delegate with respect to the grounds set forth in such statement in accordance with the provisions of such subsection.

(b) Notification by Secretary.—Before mailing the notice of deficiency referred to in subsection (a), the Secretary or his delegate may send by certified mail or registered mail a notification informing the taxpayer that the proposed notice of deficiency includes an amount with respect to the accumulated earnings tax imposed by section 531. In the case of a notice of deficiency to which subsection (e)(2) applies and which is mailed on or before the 30th day after the date of the enactment of this sentence, the notification referred to in the preceding sentence may be mailed at any time on or before such 30th day.

(c) Statement by taxpayer.—Within such time (but not less than 30 days) after the mailing of the notification described in subsection (b) as the Secretary or his delegate may prescribe by regulations, the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business.

\* \* \* \* \* \*

## § 535. Accumulated taxable income

(a) Definition.—For purposes of this subtitle, the term "accumulated taxable income" means the taxable income, adjusted in the manner provided in subsection (b), minus the sum of the dividends paid deduction (as defined in section 561) and the accumulated earnings credit (as defined in subsection (c) ).

(b) Adjustments to taxable income.— For purposes of subsection (a), taxable income shall be adjusted as follows:

(1) Taxes.—There shall be allowed as a deduction Federal income and excess profits taxes (other than the excess profits tax imposed by subchapter E of chapter 2 of the Internal Revenue Code of 1939 for taxable years beginning after December 31, 1940) and income, war profits, and excess profits taxes of foreign countries and possessions of the United States (to the extent not allowable as a deduction under section 275(a)(4) ), accrued during the taxable year or deemed to be paid by a domestic corporation under section 902(a)(1) or 960(a)(1)(C) for the taxable year, but not including the accumulated earnings tax imposed by section 531, the personal holding company tax imposed by section 541, or the taxes imposed by corresponding sections of a prior income tax law.

(2) Charitable contributions.—The deduction for charitable contributions provided under section 170 shall be allowed without regard to section 170(b)(2).

(3) Special deductions disallowed.— The special deductions for corporations provided in part VIII (except section 248) of subchapter B (section 241 and following, relating to the deduction for dividends received by corporations, etc.) shall not be allowed.

(4) Net operating loss.—The net operating loss deduction provided in section 172 shall not be allowed.

*(5) Capital losses.*—There shall be allowed as deductions losses from sales or exchanges of capital assets during the taxable year which are disallowed as deductions under section 1211(a).

*(6) Long-term capital gains.*—There shall be allowed as a deduction the excess of the net long-term capital gain for the taxable year over the net short-term capital loss for such year (determined without regard to the capital loss carryover provided in section 1212) minus the taxes imposed by this subtitle attributable to such excess. The taxes attributable to such excess shall be an amount equal to the difference between—

(A) the taxes imposed by this subtitle (except the tax imposed by this part) for such year, and

(B) such taxes computed for such year without including in taxable income the excess of the net long-term capital gain for the taxable year over the net short-term capital loss for such year (determined with regard to the capital loss carryback and carryover provided in section 1212).

*(7) Capital loss carryover.*—No allowance shall be made for the capital loss carryover provided in section 1212.

*(8) Bank affiliates.*—There shall be allowed the deduction described in section 601 (relating to bank affiliates).

*(9) Distributions of divested stock.*—There shall be allowed as a deduction the amount of any dividend distribution received of divested stock (as defined in subsection (e) of section 1111), minus the taxes imposed by this subtitle attributable to such receipt, but only if the stock with respect to which the distribution is made was owned by the distributee on September 6, 1961, or was owned by the distributee for at least 2 years prior to the date on which the antitrust order (as defined in subsection (d) of section 1111) was entered.

*(10) Special adjustment on disposition of antitrust stock received as a dividend.*—If—

(A) a corporation received antitrust stock (as defined in section 301(f)) in a distribution to which section 301 applied,

(B) the amount of the distribution determined under section 301(f)(2) exceeded the basis of the stock determined under section 301(f)(3), and

(C) paragraph (9) did not apply in respect of such distribution,

then proper adjustment shall be made, under regulations prescribed by the Secretary or his delegate, if such stock (or other property the basis of which is determined by reference to the basis of such stock) is sold or exchanged.

*(c) Accumulated earnings credit.*—

*(1) General rule.*—For purposes of subsection (a), in the case of a corporation other than a mere holding or investment company the accumulated earnings credit is (A) an amount equal to such part of the earnings and profits for the taxable year as are retained for the reasonable needs of the business, minus (B) the deduction allowed by subsection (b)(6). For purposes of this paragraph, the amount of the earnings and profits for the taxable year which are retained is the amount by which the earnings and profits for the taxable year exceed the dividends paid deduction (as defined in section 561) for such year.

*(2) Minimum credit.*—The credit allowable under paragraph (1) shall in no case be less than the amount by which $100,000 exceeds the accumulated earnings and profits of the corporation at the close of the preceding taxable year.

*(3) Holding and investment companies.*—In the case of a corporation which is a mere holding or investment company, the accumulated earnings credit is the amount (if any) by which $100,000 exceeds the accumulated earnings and profits of the corporation at the close of the preceding taxable year.

*(4) Accumulated earnings and profits.*—For purposes of paragraphs (2) and (3), the accumulated earnings and

profits at the close of the preceding taxable year shall be reduced by the dividends which under section 563(a) (relating to dividends paid after the close of the taxable year) are considered as paid during such taxable year.

\* \* \* \* \* \*

## § 561. Definition of deduction for dividends paid

*(a) General rule.*—The deduction for dividends paid shall be the sum of—

(1) the dividends paid during the taxable year,

(2) the consent dividends for the taxable year (determined under section 565), and

(3) in the case of a personal holding company, the dividend carryover described in section 564.

*(b) Special rules applicable.*—

(1) In determining the deduction for dividends paid, the rules provided in section 562 (relating to rules applicable in determining dividends eligible for dividends paid deduction) and section 563 (relating to dividends paid after the close of the taxable year) shall be applicable.

\* \* \* \* \* \*

## § 562. Rules applicable in determining dividends eligible for dividends paid deduction

*(a) General rule.*—For purposes of this part, the term "dividend" shall, except as otherwise provided in this section, include only dividends described in section 316 (relating to definition of dividends for purposes of corporate distributions).

\* \* \* \* \* \*

*(c) Preferential dividends.*—The amount of any distribution shall not be considered as a dividend for purposes of computing the dividends paid deduction, unless such distribution is pro rata, with no preference to any share of stock as compared with other shares of the same class, and with no preference to one class of stock as compared with another class except to the extent that the former is

entitled (without reference to waivers of their rights by shareholders) to such preference.

\* \* \* \* \* \*

## § 565. Consent dividends

*(a) General rule.*—If any person owns consent stock (as defined in subsection (f)(1) ) in a corporation on the last day of the taxable year of such corporation, and such person agrees, in a consent filed with the return of such corporation in accordance with regulations prescribed by the Secretary or his delegate, to treat as a dividend the amount specified in such consent, the amount so specified shall, except as provided in subsection (b), constitute a consent dividend for purposes of section 561 (relating to the deduction for dividends paid).

*(b) Limitations.*—A consent dividend shall not include—

(1) an amount specified in a consent which, if distributed in money, would constitute, or be part of, a distribution which would be disqualified for purposes of the dividends paid deduction under section 562(c) (relating to preferential dividends), or

(2) an amount specified in a consent which would not constitute a dividend (as defined in section 316) if the total amounts specified in consents filed by the corporation had been distributed in money to shareholders on the last day of the taxable year of such corporation.

*(c) Effect of consent.*—The amount of a consent dividend shall be considered, for purposes of this title—

(1) as distributed in money by the corporation to the shareholders on the last day of the taxable year of the corporation, and

(2) as contributed to the capital of the corporation by the shareholder on such day.

*(d) Consent dividends and other distributions.*—If a distribution by a corporation consists in part of consent dividends and in part of money or other property, the entire amount specified in the con-

sents and the amount of such money or other property shall be considered together for purposes of applying this title.

\* \* \* \* \* \*

*(f) Definitions.—*

*(1) Consent stock.*—Consent stock, for purposes of this section, means the class or classes of stock entitled, after the payment of preferred dividends, to a share in the distribution (other than in complete or partial liquidation) within the taxable year of all the remaining earnings and profits, which share constitutes the same proportion of such distribution regardless of the amount of such distribution.

*(2) Preferred dividends.*—Preferred dividends, for purposes of this section, means a distribution (other than in complete or partial liquidation), limited in amount, which must be made on any class of stock before a further distribution (other than in complete or partial liquidation) of earnings and profits may be made within the taxable year.